### TRAVIS v. DICKEY, Co. Treas., et al.

No. 13372—Opinion Filed Jan. 9, 1924.

(Syllabus.)

1. **Property—"Personal Property" — Statutes.**

Personal property, as defined by sections 8394 to 8398, inclusive, Comp. Stat. 1921, is every kind of property that is not real property.

2. **Taxation—"Personal Property"—Statute.**

Personal property for the purpose of taxation, as defined by section 9583, Comp. Stat. 1921, is:

"(1) All goods, chattels, moneys. * * * (16) Personal property belonging to persons or companies doing freight or transportation business and belonging wholly or in part to persons within this state. * * *"

3. **Same—Ad Valorem Taxation.**

Personal property subject to ad valorem taxation, as defined by section 9574, Comp. Stat. 1921, is: "All property in this state, whether real or personal, including the property of corporations, banks and bankers, except such as is exempt. * * *"

4. **Same—Oil Tank Cars—Liability.**

Oil tank cars owned by a person or corporation domiciled within this state and not used as a public service corporation, nor as a common carrier as defined by law, are personal property and subject to an ad valorem tax, as defined by statutes referred to in sections 1, 2, and 3 hereof.

5. **Same — Applicability of Gross Receipts Tax Law.**

Oil tank cars owned as personal property by an individual domiciled in this state and leased to a domestic corporation of this state for the exclusive purpose of transporting its own petroleum products are not a "public service" concern nor "common carriers" as defined by law, and are not taxable under section 9981, Comp. Stat. 1921.

6. **Taxation—Liability of Personal Property—Domicile of Owner as Situs.**

In theory of the law, and in the absence of proof that personal property has an actual taxable situs elsewhere, and in the absence of intervention for or claim to such tax by some other state or some other mu-

nicipality than that of the owner's domicile, it is taxable to the owner thereof in the county of his domicile.

**7. Same—Assessed Valuation — Validity— Fair Cash Value.**

In the absence of proof that personal property is not taxed above its fair cash value, as defined by statute and the Constitution, the judgment of the county court assessing property at what is adjudged to be the fair cash value thereof will not be reversed solely upon the ground that other personal property may have been taxed upon a basis apparently less than its fair cash value.

Error from County Court, Tulsa County; Z. I. J. Holt, Judge.

Proceedings for assessment of omitted property of M. R. Travis. From judgment of county court sustaining action of Wayne L. Dickey, county treasurer, in listing property for taxation, Travis appeals, making the county treasurer, the board of county commissioners, and W. M. Gulager, tax ferret, defendants in error. Affirmed.

W. D. Humphrey and Humphrey & Campbell, for plaintiff in error.

Chas. B. Rogers, Special Counsel for Wayne L. Dickey, Treasurer.

W. F. Seaver, County Attorney, for defendants in error.

HARRISON, J. This case involves the question of the right of Tulsa county to impose an ad valorem tax upon oil tank cars, owned by plaintiff in error, whose domicile is in Tulsa county, the cars in question having been leased to the Empire Refineries, Inc., of Bartlesville, Okla., and kept and used by said company in exporting its petroleum products out of Bartlesville. It might be stated in this connection that the cars in question were not listed by the county assessor in the regular course of his assessment, but were later discovered and added to the tax list by the tax ferret as omitted property, but there is no objection made to the procedure had by him, the only contention being whether or not they were subject to ad valorem taxation in Tulsa county. The right of Tulsa county to impose an ad valorem tax upon the class of tank cars involved herein depends upon the following conditions, viz.:

First: That such tank cars are lawfully taxable upon an ad valorem basis.

Second: That the owner of such cars is domiciled in Tulsa county.

Third: That such cars have a taxable situs within said county and state.

If the law determines all of the foregoing conditions in the affirmative, then Tulsa county has lawfully imposed the tax under consideration, and may lawfully collect the same. The first condition is determined by constitutional and statutory provisions, there being no decisions of this court upon the exact question involved.

The first provision of the statute pertinent to a determination of the question, that is, whether tank cars of the kind involved are subject to an ad valorem tax, is section 8399, Comp. Stat. 1921, formerly section 6594, Rev. Laws, 1910, and reads as follows:

"Every kind of property that is not real is personal."

Sections 8394 to 8398, inclusive, Comp. Stat. 1921, classify property as: First, real or immovable; second, personal or movable. Then, after defining real property, land, fixtures, and appurtenances belonging to the land, it concludes in section 8499, supra, as follows:

"Every kind of property that is not real is personal."

We must conclude, therefore, that the tank cars in question, not being real property, nor land, nor fixtures, nor appurtenances belonging to real property, are personal property.

Section 9583, Comp. Stat. 1921, formerly section 7305, Rev. Laws 1910, in defining personal property subject to taxation, provides:

"Personal property, for the purpose of taxation, shall be construed to include: First. All goods, chattels, moneys, credits and effects. * * * Sixteenth. Personal property belonging to persons or companies doing freight or transportation business and belonging wholly or in part to persons within this state. * * *"

Therefore, we see that the tank cars in question are personal property and are included within the section, supra, on personal property for the purpose of taxation.

Section 9574, Comp. Stat. 1921, the same being section 1, act 1915, page 64, amendatory of section 7302, Rev. Laws 1910, defines what property shall be subject to an ad valorem tax as follows:

"All property in this state, whether real or personal, including the property of corporations, banks and bankers, except such as is exempt, shall be subject to taxation. * * *"

The above section is a part of article 1, c. 84, the same being the chapter on revenue and taxation, Comp. Stat. 1921. The article then goes on to define and exempt certain properties from taxation, the class of tank cars in question being a class of property

not exempt, and as they come within the term "personal property," as defined by article 1, c. 77, Comp. Stat. 1921, and within the definition of personal property for the purpose of ad valorem taxation, as defined by article 1, c. 84, Comp. Stat. 1921, it is obvious that such cars were proper subjects of an ad valorem taxation, and in the absence of some provision of statute expressly providing a different method of classifying and taxing same, they were subject to an ad valorem tax.

We must bear in mind, however, that the Legislature is empowered by the Constitution to classify property and provide for different methods of taxing different classes. See section 22, art. 10, of the Oklahoma Constitution; also In re Gross Production Tax, 53 Okla. 24, 154 Pac. 362; Trustees, etc., Corp. v. Hooton, 53 Okla. 530, 157 Pac. 293.

But it is not pointed out to us, by either plaintiff or defendant in error, nor have we been able to find that the Legislature has seen fit to or has placed this peculiar kind of cars into a different class for the purpose of taxation, and providing a specific means for assessing and taxing same. Plaintiff in error contends that section 1, subd. B. Sess. Laws 1915, the same being section 9976, Comp. Stat. 1921, defines the kind or class of cars under consideration, and that section 6 of said subdivision B, the same being section 9981, Comp. Stat. 1921, provides a specific means of assessing and taxing such class of cars. It is true that section 9981, supra, provides a specific method for assessing the property defined in section 9976, supra, but the portion of said section 9976 pertinent to plaintiff in error's contention is as follows:

"For the purpose of calculating the taxable value of its property in this state, on or before the first day of December, annually, every transportation and transmission company, operating interstate lines in or through the state, as defined in the Constitution, * * * shall make out and file with the State Auditor a statement, * * * showing: * * *"

Now, it must be observed from the foregoing statute that the "transportation" or "transmission" companies provided for or defined in 9976, supra, and for which said section 9981, supra, provides a specific means of taxing, are such "transportation" or "transmission" companies only as are defined in the Constitution. Section 34, art. 9, of the Constitution defines transportation companies as follows:

"As used in this article, the term 'transportation company' shall include any company, corporation, trustee, receiver, or any other person owning, leasing, or operating for hire, a railroad, street railway canal, steam boat line, and also any freight car company, car association, express company, sleeping car company, car corporation, or company, trustee or person in any way engaged in such business, 'as a common carrier,' over a route acquired in whole or in part under the right of eminent domain, or under any grant from the government of the United States. * * *"

"The term 'public service corporation' shall include all transportation and transmission companies * * * and all persons authorized to exercise the right of eminent domain. * * *"

It will be seen that the above constitutional definition includes such persons or corporations only as are engaged as a "common carrier," not only as a "common carrier," but over a route acquired in whole or in part under the right of eminent domain, and such as come within the term "public service corporation."

Now, the tank cars in question are conceded to be the private personal property of plaintiff in error, M. R. Travis, but under the lease contract used by the Empire Refineries, Inc., a domestic corporation, not as a common carrier, or public service corporation, but for the express purpose of transporting its own oil products to wheresoever it may sell same. They are used in no sense as a common carrier. They are in no wise subject to the demands of the public for use, and are neither a transportation company, as defined by the Constitution and statute, nor a public service corporation as defined by either Constitution or statute, nor a common carrier as defined by law, for the lease contract itself provides that they are to be used by the lessee for the purpose of transporting its own personal products.

The meaning of the term "common carrier" is so generally known as to need no definition; however, it has been tersely and accurately defined in Ruling Case Law as follows:

"A common carrier has been defined to be one who undertakes for hire or reward to transport the goods of such as choose to employ him, from place to place."

See 4 R. C. L., page 346, and decisions cited in note 7. Also page 546, Id., and cases cited in notes 8 and 9.

It is plain, therefore, that the cars in question do not come within any of the definitions above referred to and are, therefore, not taxable under the law upon which plaintiff in error relies, viz., section 9976.

If a tank car company, whether domestic or foreign, should engage in the busi-

ness of furnishing tank cars to the public for transporting petroleum products, that is, where such car company, whether domestic or foreign, holds itself out to the public, to any one who may choose to use its cars in transporting petroleum products, it would properly come within the section relied upon, and the 4 per cent. therein provided would then be in lieu of all other taxes for which such property could be held liable; it would then come within the term "public service corporation," and within the term, "transportation company," and within the term "common carrier", as defined by law, but the cars in question come within neither definition, but are private personal property of an individual, plaintiff in error, whose domicile is in Tulsa county, Okla. The cars themselves are leased to a corporation, which under the contract of lease is bound to use them for its own private use, and are in no sense used within the meaning of "common carrier", "public service corporation," or "transportation company," as defined by law, and are therefore not properly taxable under the section upon which plaintiff in error relies.

However, it may be that if such cars have paid a tax in good faith under section 9981, supra, for the years herein, viz., 1920 and 1921, a court of equity might be authorized to grant them credit for the taxes paid, but that question not being in the case at bar, we are not deciding it, but merely suggesting what might be done under proper circumstances and proof. In this case we notice that the mileage taxes which plaintiff in error claims to have paid are not shown to have been the 4 per cent. provided for in section 9981, Session Laws 1921, and in lieu of all other taxes, or whether they are paid under section 9810, which provides that the gross revenue therein provided for shall be in addition to the taxes levied upon an ad valorem basis. In other words, this court cannot ascertain from the record or briefs whether the mileage taxes which plaintiff in error claims to have paid were paid under section 9810, which provides that certain gross revenue shall be paid in addition to the ad valorem tax, or whether they were paid under section 9981, supra, which provides that the 4 per cent. therein levied shall be in lieu of all other taxes. The mere fact that the defendant in error does not dispute the contentions that a mileage tax was paid is not sufficient to inform the court as to which tax was paid.

For the above reasons the contention of plaintiff in error that the taxes paid were in lieu of all other taxes and that the property in question is not a proper subject of an ad valorem taxation cannot be sustained.

As to the second condition upon which the ad valorem tax herein sought to be collected might be collectible, viz., the domicile of the owner, it is conceded that the domicile of the owner, plaintiff in error, is in Tulsa county, Okla.

This brings us to the third condition, viz.: the question of taxable situs.

Plaintiff in error contends that even though such cars were subject to an ad valorem tax, they were not taxable in Oklahoma for the reason that their situs was in the state of Kansas. This contention is based solely upon the folowing provision of the lease contract, to wit:

"Said cars shall be billed to the Standard Asphalt & Refining Co., Independence, Kan., from Warren, Pa. * * * Lessee agrees to accept and lessor agrees to deliver these cars to the plant of the Standard Asphalt & Refining Co., Independence, Kan."

The foregoing paragraphs of the contract constitute the entire ground upon which plaintiff in error contends that said tank cars, if at all subject to an ad valorem tax, had their situs in and were taxable in the state of Kansas.

Plaintiff in error then cites a number of decisions from this court and from the Supreme Court of the United States in support of his premise, and we are free to say that if such premise were correct, the decisions cited quite soundly support the contention, but we cannot agree to the correctness of the premise, we cannot agree that under the terms of the lease contract the cars were delivered to the Standard Asphalt & Refining Company in Independence, Kan., with the slightest intention of being kept there, or used there by the said Standard Asphalt & Refining Company, or were to be in any way under its control. The fact is that the lease contract in question was not made between the owner, M. R. Travis, and the Standard Asphalt & Refining Company, but was made between M. R. Travis and the Empire Refineries, Inc., of Bartlesville, Okla., and specifically provided that they were to be used by said company in Oklahoma for the transportation of its own petroleum products. There is some intimation of contention in the brief of plaintiff in error that the Empire Refineries, Inc., was a subsidiary company of the Standard Asphalt & Refining Company of Independence, Kan., but no proof to sustain such contention. There is no evidence that the Empire Refineries, Inc., of Bartlesville, Ok-

la., was a subsidiary of the Standard Asphalt & Refining Company of Independence, Kan., although such fact could have no effect upon the issue involved, but the contract was entered into between the Empire Refineries, Inc., of Bartlesville. Okla., and M. R. Travis, the owner of the cars. They were the sole parties to the contract, which makes no mention of the Standard Asphalt & Refining Company of Independence, Kan., further than that the contracting parties agreed that the cars were to be delivered from Warren, Pa., the place of purchase by Travis, to the Empire Refineries, Inc., lessee. at the plant of the Standard Asphalt & Refining Company. Independence, Kan., and the evidence shows uncontroverted, that such cars were soon thereafter brought into Oklahoma by the Empire Refineries, Inc.. and were kept and used by said company for its exclusive benefit in exporting its own petroleum products out of Oklahoma to wheresoever a purchaser might be found. Besides, the contract provides:

"This agreement made and entered into this (9) ninth day of November, 1918, by and between M. R. Travis of the city of Tulsa, Oklahoma, party of the first part, hereinafter referred to as 'lessor,' and the Empire Refineries, Incorporated, a corporation, party of the second part, hereinafter referred to as 'lessee',

"Witnesseth: For and in consideration of the covenants and agreements to be kept and performed by the respective parties hereto and the rental bills to be made by the lessee to the lessor and to be paid by the lessee in the sums and at the times hereinafter provided for, it is agreed as follows:"

Said contract was signed by M. R. Travis, as owner lessor, and the Empire Refineries, Inc., as lessee; the Empire Refineries, Inc., binds itself as a domestic corporation of Oklahoma to pay everything required to be paid and to be liable for everything for which any one is held liable.

In addition to provisions above quoted, the contract further provides:

"Lessee shall collect and retain all mileage earned by said cars while in the service of lessee and keep and maintain all records pertaining to the movement of said cars. Lessee expressly agrees to so route and ship said cars that the empty mileage will be equalized by the loaded mileage.

"Lessee shall pay any empty mileage that may be charged against said tank cars and shall pay any tax or assessment levied on said cars or mileage by any federal, state or municipal government through which said tank cars shall travel.

"That the lessor agrees to allow lessee to have complete and uninterrupted control and use of said cars in the United States and Canada over the period of this lease. * * *"

Now, it will be observed that the foregoing conditions provided that the lessee shall have complete and uninterrupted control and use of said cars during the period of the lease. It will be observed, further, that said lease provides that lessee shall pay any empty mileage that may be charged against said cars and shall pay any taxes levied on said cars or mileage of any federal, state or municipal government through which said cars may travel: in plain words the Empire Refineries, Inc., obligates itself not only to pay any taxes which may be assessed against said cars, but to pay any mileage that may be assessed against them, and any other damage they may sustain. Therefore the contention that said cars had a taxable situs in Kansas by reason of the terms of said contract is without merit and cannot be sustained. There was no attempt made to show that said cars ever had an actual taxable situs in the state of Kansas, nor any effort made to show that they were taxable in said state, except by the terms of the contract. In our opinion, the terms of the contract refute the contention. and the authorities cited by plaintiff in error in support of such contention are not in point, and the contention in this regard cannot be sustained.

We now come to the most serious portion of the problem presented, viz., whether the cars in question were taxable to the owner in Tulsa county. It is claimed by plaintiff in error that none of said cars were ever in Tulsa county. The basis of the contention of defendant in error that said cars were taxable in Tulsa county was that the domicile of the owner, M. R. Travis, was in Tulsa county.

The proof that the Empire Refineries, Inc., paid to the state for each of the years 1920 and 1921 some kind of mileage tax on the entire 5 cars and though it is indefinite as to just what kind of tax was paid, it is equivalent to conceding that all said cars were subject to a tax in the state equivalent to and in lieu of an ad valorem tax. It being in effect conceded that all of such cars were subject to the state for a tax equivalent to and in lieu of an ad valorem tax, the theory of the law is that they were properly taxable to the owner thereof in the county of his domicile. See entire context article 55, c. 84, Comp. Stat. 1921. The theory of the law is based not upon the fiction, mobilia sequuntur personam, but upon the principle that such is true in contemplation of statute, in the absence of

proof to the contrary and in the absence of intervention for or claim to such tax by some other state or some other municipality than that of the owner's domicile. See notes "A" and "B" to Liverpool & L. G. Ins. Co. v. Bd. of Assessors (La.) L. R. A. 1915 C. 909; also 37 Cyc. 952; and notes to Commonwealth v. West India Oil Ref. Co. (Ky.) 36 L. R. A. (N. S.) 295; 26 R. C. L. 242.

Therefore, in the absence of proof of their actual taxable situs being elsewhere, or that the taxes had been paid elsewhere, the burden of proving same being upon the Empire Refineries, Inc., and in the absence of intervention for or claim to said tax by some other state or some other municipality of this state, the theory of the law that taxes upon personal property are chargeable to the owner in the county of his domicile is not overcome and there being no proof that the actual taxable situs of such property was elsewhere than in the county of the domicile of the owner, and in the absence of intervention for or claim to said tax by some other state or some other municipality of this state, it being in effect conceded that such property is subject to the state for a tax equivalent to and in lieu of an ad valorem tax, the general theory of the law should prevail and judgment of the county court be affirmed.

It is contended by plaintiff in error that the tank cars in question were taxed upon a basis of their fair cash value and that the judgment of the county court in taxing same according to their fair cash value should be reversed because other personal property was assessed and taxed at a lower value than its fair cash value.

This contention cannot be sustained, for the reason that section 8, article 10, of the Constitution, and section 9960, Comp. Stat. 1921, provides that personal property shall be assessed at its fair cash value, etc., and in the absence of proof that property has been assessed above its fair cash value, the judgment of the county court upon conflicting testimony as to the fair cash value of such property will not be disturbed.

Likewise, in the absence of proof that the property in question was arbitrarily or capriciously discriminated against, the judgment of the county court upon conflicting testimony that other personal property was taxed at less than its fair cash value will not be disturbed when the testimony reasonably tends to support the judgment of the trial court.

In the case at bar the judgment of the trial court upon the issues involved herein is reasonably supported by competent testimony.

Affirmed.

All the Justices concur, except NICHOLSON and LYDICK, JJ., not present.