**STANDARD PAVING CO., Inc., v. COUNTY BOARD OF EQUALIZATION OF BECKHAM COUNTY et al.**

No. 18126. Opinion Filed Dec. 31, 1928.

Allen, Underwood & Smith, for plaintiff in error.

C. L. Clearman, County Atty., and T. R. Wise, for defendants in error.

HALL, C. Plaintiff in error was a domestic corporation, with its principal place or business in the city of Tulsa. On January 1, 1926, it was the owner of property, either temporarily or permanently located in Beckham county, in this state.

The evidence failed to show how long the property had remained in that county, or the use to which it was devoted. The business of the corporation does not appear from the evidence, except as suggested by its name and the list of property assessed for taxation in that county. A portion of the property assessed consisted of a steam shovel, graders, air compressors, gas pumps, tractors, concrete buggies, wheel barrows, mixers, blacksmith shop, cots, bedding, hose, tools, junk, jack hammer, wagons, fresnoes, warehouse, road slips, shearing machines, electric hoist, gas hoist, gasoline motors, etc.

The owner of the property, plaintiff in error herein, protested the assessment (which was made by the assessor and not submitted by any agent of thee corporation), and a hearing was had before the board of equalization. The assessor prevailed, and the corporation appealed from the decision of the equalization board to the district court. The assessor offered no evidence except his assessment. The corporation offered none except, by proper stipulations, its petition was admitted in evidence as the testimony of its managing officer.

The petition stated that the corporation had rendered a statement for the assessment of its corporate property, and had rendered same in Tulsa county, Okla. A copy of its statement rendered was attached to its petition. The statement was made upon a blank furnished by the fiscal officers. The statement showed on its face that the corporation had apportioned its property up to the value of $5,000 to Beckham county for that tax year. The petition also stated, in general terms, that the property in Beckham county was not permanently located there, but was there for temporary purposes only.

The trial court held the property taxable in that county. It undoubtedly did this on the evidence of the corporation itself, in admitting that it had allocated a portion of its property to Beckham county. This was good evidence, but it is not conclusive. Beckham county would have no authority to tax the property unless it had gained a legal situs for taxation purposes there.

In view of the evidence in this case, or rather the lack of evidence, it was evidently the theory of the board of equalization and the county attorney that the assessor was authorized under the statutes to assess everything that he could find at any time, within his official limits, which was in the county, either temporarily or permanently situated there on the 1st day of January. On the other hand, the plaintiff in error rests its case upon the theory that the property was only taxable as a unit (meaning taxable only upon its "moneyed capital, surplus and undivided profits"), at its principal place of business, in the city of Tulsa.

The positions of both parties are incorrect. The plaintiff in error here contends: (1) That under no circumstances should the property be taxable other than at the principal place of business of its owner; that the property, as such, of a corporation, cannot be separately taxed in any county; that the method of taxing the moneyed capital, etc., is exclusive of all other methods; and (2) that the property never acquired a situs for the purpose of taxation in Beckham county; that the property was "transient," and was there only temporarily. The other contention is that the assessment was excessive.

Addressing ourselves, first, to the question raised, whether or not corporate property is taxable under any circumstances other than at the principal place of business of the corporation, the reader may derive a better understanding of our statutes and the applicable law by briefly reviewing the history of the taxation of personal property as dependent upon its situs under common law. In this particular connection, our primary statutes are but declarative of the common-law principles. At common law, the maxim mobilia sequuntur personam—movables follow the person — was the rule. In other words, the title and dominion of personal property for all purposes was governed by the law of the domicile of its owner, and such property was taxable there and at no other place. When corporations came into existence, the same rules governed.

Sections 9616 and 9960, Comp. Stat. 1921, provide that the assessor shall demand from each person, firm or corporation within his city, town or township, and **where the owner resides,** a statement under oath of his or its real estate **within** the local taxing jurisdiction, and all personal property owned or in possession of each person, firm or corporation. It will be observed that the pro-

visions of these sections relating to personal property are not confined to properly situated within the county, town or township, as in the case of real estate, but extends primarily to personal property not having its physical presence in the particular local taxing jurisdiction where the owner lives. In other words, the statutes include personal property outside of the local jurisdiction when such personal property has not gained a legal and actual situs elsewhere.

Section 9962, Comp. Stat. 1921, provides the method of arriving at the value of real and personal property of a corporation, for the purpose of assessment and taxation; and also the statute reiterates the general provisions, or rather makes more definite the residence or domicile of the corporation for the purpose of taxation. It fixes the domicile for taxing purposes at the principal place of business of the corporation. which is equivalent to the term "where the owner lives or resides," when used in cases where the taxation of personal property of an individual is involved.

It will thus be seen that the primary rule under our statutes is the same as at common law; that the property of either a corporation or an individual is prima facie taxable at the legal residence of the owner. In the case of a corporation, its legal residence for general taxation purposes is at its principal place of business.

The rule, as applied to corporations—which is no different from the rule applied to individuals or unincorporated concerns — is stated in 26 R. C. L. 176, sec. 150, as follows:

"In general, real estate and tangible personal property of such a character that it has a fixity of situs in a particular place, is subject to local taxation where it is situated, and the remainder of the property of the corporation is reached indirectly by a tax on the capital stock or on the franchise."

While it may be conceded that the principle of taxing personal property at the domicile of the owner has always remained the basic rule for the taxation of such property, it has never been considered as a controlling element in this country. On this point, the Supreme Court of the United States, in the case of Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 118, 11 S. Ct. 876, 35 U. S. (L. Ed.) 613, said:

"The old rule, expressed in the maxim mobilia sequuntur personam, by which personal property was regarded as subject to the law of the owner's domicile, grew up in the middle ages, when movable property consisted chiefly of gold and jewels, which could be easily carried by the owner from place to place, or secreted in spots known only to himself. In modern times, since the great increase in amount and variety of personal property, not immediately connected with the person of the owner, that rule has yielded more and more to the lex situs, the law of the place where the property is kept and used."

In the face of an express statute, or where justice demands another course, in this country, the rule has always been disregarded. Again, the Supreme Court of the United States, in the State Board of Assessors v. Comptoir National d' Escompte, 191 U. S. 388, 24 S. Ct. 109, 48 U. S. (L. Ed.) 232, in considering the point and principle of law under consideration said:

"The maxim, mobilia sequuntur personam, which was applied in the court below as forbidding taxation of the checks in the hands of the agent in New Orleans, has frequently been held to be but a fiction of law, having its origin in considerations of general convenience and public policy, and not to be applied to limit and control the right of the state to tax property within the jurisdiction, it being intended to permit the owner to deal with his personalty according to the law of his domicile, and to make testamentary disposition of it according to the law where he is, rather than that of the situs of the property. It was intended for convenience, and not to be controlling where justice does not demand it."

A recent expression on this subject is found in the case of the State v. Harrington (Mont.) 217 Pac. 681, wherein a great array of the authorities, recent and otherwise, are collected. In this case it was said:

"* * * It is a well-recognized exception that, where the personalty has a business situs apart from the domicile of the owner, it is not taxable in the place of the owner's domicile."

Regarding its application to different taxing jurisdictions in the same state, it is stated in 26 R. C. L., p. 277, as follows:

"As between different towns and taxing districts in the same state, the rule was abrogated in many cases even prior to the Revolution. and such personal property as machinery employed in manufacturing, and fixtures and goods, wares and merchandise, employed in trade, were taxed in the place where the manufacturing or trade was carried on. rather than in the town in which the owner lived."

It will be readily observed that the rule regarding the taxation of personal property in the town or particular local taxing jurisdiction where the owner had his legal residence or lived, was but a fiction of law which gave way to the law of necessity

and justice. However, in Oklahoma, these rules of necessity are found in and incorporated in the statutes. In addition to the primary rule declared in sections 9616 and 9960 of the Statutes, Id., we have sections 9625 and 9962, which, among other things, provide as follows:

· "Sec. 9625. When a person is **doing business** in more than one county, the property and credits existing in any one of the counties are to be listed and taxed in that county; and credits not existing in nor pertaining especially to the business in any one county are to be listed and taxed in that county where his principal place of business may be. * * *"

"Sec. 9962. It shall be the duty of the managing officer of every corporation to make, under oath, and deliver to the assessor of the county where its principal business is transacted, * * * a statement, * * * and such statement shall show the description, the **location, and assessed value** of all real estate and **tangible personal property** owned by such corporation, **listed and assessed separately in its name.** The assessor shall return the sworn statement so made, with his assessment, to the board of equalization of the city, town or township, wherein said corporation is located."

These statutes are definite expressions of the legislative body; and were enacted to meet and take care of a necessity which arose immediately after the establishment of the American colonies. Under section 9625, the assessment of personal property to the individual automatically adjusts itself, in that no double taxation can arise by reason of such provision of the law. But, the provision in section 9962, requiring a corporation, when rendering its statement for taxation, to disclose the value of its personal property apportioned to other counties and there "separately assessed," was designed to protect the corporation from the injustice of double taxation by reason of its property having an actual situs or location in more than one county. This particular statute presupposes that when a corporation is doing business in more than one county, it will first render for taxation its property in such other county than at its principal place of business; and then later render its statement to the assessor of its domicile, showing what portion of its property has been apportioned to another county or counties, so that the assessor and board of equalization may make proper deduction from the unit assessment of the corporation.

. From these statutes it is clear that, in all cases where the taxation of personal property is involved, it was the express intention of the Legislature to tax such property in the particular taxing jurisdiction where the property is situated with some degree of permanency, and used, or having been used, in doing some substantial part of the business of its owner. In this respect there is no difference whatever between the property belonging to corporations and the property of individuals or unincorporated concerns. On this point, the governing principle is stated in 26 R. C. L. p. 178, as follows:

"It is generally, though not universally, held that a corporation is a person within the meaning of a law relating to taxation unless it appears from the context that only human beings are intended to be included, and accordingly a statute imposing a tax on the property of every person will apply to and include the property of the corporation."

This question, however, was definitely settled in the case of In re Assessment of Chickasha Cotton Oil Co., 80 Okla. 101, 194 Pac. 215. In that case the rule was announced in the fifth paragraph of the syllabus as follows:

"Real estate is always taxed in this state in the taxing district where situated. When a taxpayer is doing business in more than one county in the state, the property and credits existing in any one of the counties are to be listed and taxed in that county. In case of a local corporation, the value of the real estate and the value of its property and credits existing in counties other than the county where the corporation is located must be deducted from the net value of the moneyed capital, surplus and undivided profits as basis for assessment in the county where it is located."

Having definitely reached the conclusion that property of an individual or a corporation is taxable as above set forth, the next question which arises and is here presented: Is, · or was, the property used in such a manner in such other county as to make it, in point of fact, a part of the property of the particular local taxing jurisdiction? Is the property there temporarily, or does it possess a degree of permanency, and incorporated into the bulk of other like property in the county, which give it the same characteristics as property belonging to local residents engaged in doing business of like nature in the particular community?

Our statute, as a precedent to taxation of personal property in more than one county, or in the county other than the residence of the individual or corporation, provides that the owner must be "doing business" in such other county than the owner's domicile. The term "doing business" imports some considerable degree of perma-

nency, as against mere temporary or casual presence. But, by what characteristics is a state of temporary or casual presence to be distinguished from a state of permanency? Or just what degree of permanency is required to cross the border line between **not doing business** and **doing business?** For the solution of this question, no rule has yet been formulated, and perhaps, in the nature of things, none can be, the question being one more of fact than of law, and the adjudications on the question do not furnish much assistance.

The property of an individual or corporation cannot escape taxation in the particular local jurisdiction where he or it is doing business by an intention to remove it at some future time upon the happening of a certain contingency, for it might be said that all property is subject to such. A criterion is whether the property is there for an indefinite time or some considerable definite time, and is used or exists there to be used in much the same manner as other property is used in that community.

On the particular point under discussion, there is a certain analogy between taxation of personal property as between different states, and the taxation of such property as between different counties in the same state. The following leading cases reflect some light on the subject.

It is a universal rule that ships and other vessels are subject to taxation only at the place where the owner resides. A seagoing dredge-boat was the property of a concern in Camden, N. J., which city was its port of registry and home port. The vessel, however, was actually built in Tacoma, Wash., and was put in use and kept for a long period of time on a dredging contract in that state. The court, in North American Dredging Co. v. Taylor, County Treasurer, 56 Wash. 565, 106 Pac. 162, held that the vessel had gained a situs for the purpose of taxation in the state of Washington.

In the second paragraph of the syllabus, the court held that:

"A vessel may be assessed without reference to the home port or the residence of the principal owner or agent, when it is put to such use as to impress it with a local character."

In the course of the opinion the court, quoting from the case of National Dredging Co. v. State, 99 Ala. 462, 12 South, 720, as follows:

" 'There is nothing in the nature of this particular property to take it out of the general principle. The fact that it is float-

ing property, and may be moved from place to place and port to port by water, furnishes no more reason for exempting it from taxation here than would exist for the exemption of property which did not float, and could be moved from place to place only over land,' There must be some reasonable limit to the rule that overcomes the ordinary rule of situs when applied to such property, and we think it must be found in the answer to the question whether the presence in Pierce county of the dredger was temporary or merely indefinite. If the former, it would probably not be taxable. If the latter, it would be, so long as it was there at a time when the levy was made and the lien attached. Otherwise, the property might remain an indefinite time running over the period of one or a dozen contracts, or so long as it was exempt from taxation, although, during the whole time, the property would receive the protection of the local laws. If the intention merely were allowed to control, we opine that property of this character would never be taxed, unless the conscience of the owner moved him to list it at the home port or at his domicile, which under the facts of this case he would not be bound to do."

This decision was not based upon any special statute attempting to fix the situs of personal property for the purpose of taxation.

The case of Grigsby Construction Co. v. Freeman, 108 La. 435, 32 South. 399, involved ultimate facts similar to the case at bar. In that case, a Texas corporation having its domicile at Dallas, Tex., was engaged in the business of the construction of dams, dikes, railroad beds, and other earthworks, in that state and other states. For that purpose its outfits consisted of mules, scrapers, wagons, commissary goods, tents, stores, etc. It sent a portion of this property into the state of Louisiana to engage in the construction of a roadbed—to carry out a particular contract, and perhaps other contracts, if it could get them. This corporation contended that its property was there only temporarily; that it intended to remove it as soon as its contracts were completed, and that its place of taxation was in the state of Texas. The court decided otherwise, and held that the property was properly taxable in Louisiana. In disposing of the case, the court discussed the following illustrative cases, along with its own observations, to wit:

"In the case of State v. Mayor, etc., of City of Charleston, 2 Speers [S. C.] 719, the complainant lived outside the city of Charleston, but had his place of business in the city, and to attend to his business went daily into the city with his carriage and coachman;

also he had a slave whom he sent every day into the city to do jobs wherever employment could be found for him. Under the city regulations, the slave had to wear a badge, and this badge had to be furnished by the city. The slave coachman and the carriage and horses were held not to be taxable, but the other slave was held to be taxable.

"In the case of Kelley v. Rhodes (Wyo.) 39 L. R. A. 594, a herd of sheep was held to be taxable which was being driven in the direction of market across the state, but slowly, so as to permit the sheep to graze as they went, the main purpose being to graze the animals and put them in condition for the market, the moving toward market being merely incidental. The court distinguished the case from one where the moving towards market would have been the main purpose and the grazing a mere -incident.

"In the case of Robinson v. Longley, 18 Nev. 71, a circus was held not to be taxable.

"In People v. Niles, 35 Cal. 282, the court said arguendo: 'It must appear that the property is being to some extent kept or maintained in said county and not there casually, or in transitu, or temporarily in the ordinary course of business or commerce.'

"On the other hand, the Supreme Court of the United States, in the case of Brown v. Houston, supra [114 W. S. 622]. and this court, in the same case, 33 La. Ann. 843, seems to have regarded the fact that the property had been brought to the state for use,' as being a determinative circumstance.

"In the instant case, the property was not in course of transportation, but was here for use, and for a use likely to be of some duration, possibly a full year; and for the time being was incorporated in the bulk of the property of the state. It was distinguishable from the rest of the property of the taxing district in no respect except in the intention of the owner to remove it at some future time more or less distant. Under these circumstances, its situs approached nearer to permanency than did that of the sheep in the Wyoming case, or that of the coal in the Brown v. Houston Case."

In the case of Union Refrigerator Transit Co. v. Lynch, County Treasurer (Utah) 55 Pac. 639, 48 L. R. A. 790. it appears that certain refrigerator cars, the property of a Kentucky corporation, were used in interstate commerce in running in and out of the state of Utah. The court held that the cars were taxable in Utah—that the cars were constantly being used there in furtherance of a material part of the business of the corporation.

The case of Eoff v. Kennefick-Hammond Co., 80 Ark. 138, 96 S. W. 986, 117 A. S. R. 79, 10 Ann. Cas. 63, 7 L. R. A. (N. S.) 704, involved property which was used by a Missouri corporation in grading and constructing a roadbed for a railroad in the state of Arkansas. It was being used to construct a roadbed about 15 miles in length in one of the counties of that state. The Supreme Court of Arkansas reviewed numerous cases on the subject, many of which we have cited herein, and held that the property had gained a situs for the purpose of taxation in that state.

Michigan has a statute similar to ours in respect to the assessment and taxation of personal property. A recent case rendered in 1925, construing their statute, is Greilick v. Traverse City, 231 Mich. 699, 204 N. W. 718. The facts, as well as the law, of that case. as reflected in the first paragraph of the syllabus, are as follows:

"A gas boat used in connection with a fish business, and usually kept at or near a fish house located in a certain township where said business was conducted, was assessable in said township rather than in the city where the owner lived, although it was temporarily moored in the river in said city when the assessments therein were made."

Words and Phrases contains a collection of numerous cases where the courts, under varied circumstances, have held certain acts to constitute "doing business" and "not doing business." The following excerpts from two cases found in vol. 2, W. & P. (2nd Ser.) are as follows:

"A foreign corporation engaged in the manufacture and installation of elevators contracted in New York to furnish and install elevators in a building in New York City. It has an office in New York, and brought suit for the amount due on the contract, alleging a substantial performance. Held, that its acts constituted 'doing business within the state,' within General Corporation Law, * * * prohibiting the 'doing of business within the state' without having first secured a certificate from the Secretary of State. etc. Portland Co. v. Hall & Grant Const. Co.. 106 N. Y. Supp. 649. 654. 121 App. Div. 779.

"Within a statute requiring foreign corporations doing business in the state to obtain a certificate of authority from the Secretary of State. the carrying on through an agent of the business of selling agricultural implements and farm machinery of. various kinds for many years. which. instead of being merely casual or incidental. was continuous and carried on as such a business is ordinarily conducted. constitutes the 'doing of business in this state.' Osborne & Co. v. Shilling. 88 Pac. 258. 259, 74 Kan. 675, 11 Ann. Cas. 319."

Except the Michigan case, we do not contend that the analogy between all of the cases cited and the present case is exact. They are, however, illustrative of the general governing principle as fixing the situs of personal property for taxation. The statute, section 9625, in using the term "doing business" in more than one county, imports some higher degree of permanency of the property when used in connection with such business, than which might barely subject the property of a nonresident to taxation in a given state. Section 9625, pertaining to "doing business in another county," implies a continuity of conduct in that respect, such as might be evidenced by the investment of capital and with the maintenance of an office or place for the transaction of business, and those incidental circumstances which disclose and attest an intent on the part of the corporation or individual to avail itself of the privilege of carrying on a business there, such as will result in a portion of its property being incorporated in the bulk of the property of the county, and used for some substantial period of time in such a manner as other property of like character of the local taxing district is used.

For the reasons herein assigned, the judgment in this case is hereby reversed, and the cause remanded for a new trial in accordance with the views herein expressed.

TEEHEE, HERR, JEFFREY, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 26 R. C. L. pp. 178, 179; 4 R. C. L. Supp. p. 1648; 5 R. C. L. Supp. p. 1388.