**JOHNSON OIL REFINING CO. v. STATE ex rel. TEMPLETON, County Atty.**

No. 25459. June 11, 1935.

McCollum & McCollum, for plaintiff in error.

Sim T. Carman, Co. Atty., and McCoy, Craig & Pearson, for defendant in error.

BUSBY, J. This is a proceeding instituted under sections 12346 and 12348, O. S. 1931 (commonly referred to as the Tax Ferret Law), to list and assess for taxation in Osage county, Okla., as omitted personal property certain crude oil belonging to the Johnson Oil & Refining Company.

The case involves different quantities of crude oil which were located in Osage county on the first day of January of each of several years. The principal question to be determined is whether each of the several quantities of tangible personal property had acquired a situs in Osage county for the purpose of taxation.

The county court of Osage county, wherein the cause was tried on appeal from the county treasurer of the same county, decided the matter adversely to the property owner, Johnson Oil & Refining Company, holding that the situs of the property was in Osage county. Johnson Oil & Refining Company brings the case to this court for review, appearing herein as plaintiff in error. The state of Oklahoma, on relation of the county attorney of Osage county, is the defendant in error. For the sake of convenience we shall refer to the parties as property owner and taxing authorities, respectively, when not otherwise designated.

The taxing authorities submitted their case in the trial court on a stipulation as to the facts, the pertinent portions of which are as follows:

"It is hereby stipulated and agreed by and between the parties hereto that on January 1, 1927, the defendant had in its booster tanks along its pipe lines in Osage county, Okla., oil in the amounts later given; that said tanks and pipe lines belonged to the Johnson Refining Company and that it was the intention of the defendant to transport this oil to their refinery at Cleveland, Okla., in Pawnee, Okla., through their said pipe lines. * * *

"Now, it is further agreed that among other purposes for which this oil of the respondent was in their tanks on the 1st day of January on each of those years was that it was put in there to let off the gas head off of the oil so that the engines could handle the oil more efficiently and in order that the defendant might measure the oil in said tanks which it had theretofore purchased.

"It is further agreed that the oil involved in this case in these tanks belonged to respondent and that the royalty owner, or the Osage Tribe of Indians, had no interest therein, they having theretofore been paid their interest by the producer and that the producer had no interest therein.

"It is further stipulated that the Johnson Oil Refining Company did not return the oil stated in this stipulation for assessment and taxation in Osage county for the years stated in the stipulation and that it was the oil of the defendant.

"It is further stipulated that the oil in these booster tanks along the pipe line was purchased from various producers in Osage county, and that when such oil was run from the tanks on the producing lease into the gathering line which conveyed it to these booster tanks that it became the oil of the defendant upon leaving the tanks on the lease and running into the gathering line which conveyed it to the booster tanks."

The property owner introduced additional evidence in the trial court amplifying the foregoing stipulation and explaining in a more detailed manner the purpose and use of the booster tanks in connection with the transportation of crude oil through pipe lines. This evidence tended to establish that the flow of oil through the booster tanks was a mere incident to the transportation thereof.

In deciding the case the trial court made the following pertinent finding, which is incorporated in the journal entry:

"And now on this 5th day of February, 1934, this matter comes on for decision, and after due consideration the court, being fully advised in the premises, finds that the oil involved in this case was in what is known as working tanks, and was on the 1st day of January of each year, from 1927 to 1933, both inclusive, actually in transit from the point where such oil was received by the Johnson Oil Refining Company to its refinery in Pawnee county, Okla., but that such oil was physically present in Osage county, and, although in transit, had a taxable situs in said county on the 1st day of January of each year, beginning with 1927 to and including 1933, and that the same should be extended on the tax rolls of said Osage county, for taxation for said years."

The question of whether oil produced immediately prior to the first day of January on which the gross production tax has been paid is exempt from ad valorem taxation by reason of the payment of the gross production tax, is not presented in this appeal.

We shall, therefore, in this opinion, treat the property involved as subject to the burden of ad valorem taxation, unless it should be relieved from that burden for the reasons herein urged by the property owner.

It is contended in the brief of the property owner that the crude oil involved should escape taxation or be classified as exempt, for the reason that on the first day of January it was in transit from one point to another within the state of Oklahoma. The property owner asserts that there is a direct analogy between property in transit in interstate commerce and property in transit in intrastate commerce, and that, since the former, under the decisions of the Supreme Court of the United States, is not subject to local taxation in a state through which it is passing, the latter should be exempted or excused from taxation in a state where it is moving from one point to another. The asserted analogy is based upon a misconception of the scope and purpose of the interstate commerce cases. Those cases do not purport to exempt the property in transit from any and all taxes. They merely excuse such property from local taxation in a state in which it has no taxable situs. They tend to prevent double taxation and eliminate the possibility of an unwarranted interference by local taxing authorities with property flowing through the channels of interstate commerce, which is a matter purely within the control of our national government. They deal with the question of where property may be taxed as distinguished from the question of whether

it is subject to taxation. Thus the Interstate Commerce Commission cases are of no assistance in determining whether the property involved in this action is taxable, although, as we subsequently point out, they have a persuasive influence in determining what constitutes a situs for the purpose of taxation in so far as that question is not controlled by the statutes of this state.

The property owner fails to call our attention to any constitutional provision or statute of this state which would exempt from taxation tangible personal property merely because it is in transit from place to place within the state. An examination of the applicable constitutional and statutory provisions completely negatives the idea of such an exemption.

Section 50, art. 5, of the state Constitution provides that:

"The Legislature shall pass no law exempting any property within this state from taxation, except as otherwise provided in this Constitution."

Section 6 of art. 10 of the Constitution deals with the classes of property that may be excused from taxation. It contains no suggestion that property in transit from one point to another within the state may be treated as exempt.

Section 12317, O. S. 1931, provides in part:

"All property in this state, whether real or personal, including the property of corporations, banks and bankers, except such as is exempt, shall be subject to taxation. * * *"

Section 12318, O. S. 1931, contains the following provision:

"All property in this state whether real or personal, including the property of corporations, banks and bankers, * * * except such as is exempt shall be subject to taxation. * * *"

Section 12581, O. S. 1931, provides in part:

"All taxable property shall be listed and assessed each year at its fair cash value, estimated at the price it would bring at a fair voluntary sale, in the name of the owner thereof on the first day of January of each year, as soon as practicable on or after the 15th day of January, including all property owned on the 1st day of January of that year. * * *"

And section 12583, O. S. 1931, contains the following provision:

"The owner of personal property removing the same from one county, town or district to another between January 1st and September 1st, shall be assessed in either

in which he is first called upon by the assessor."

Even where an exception is created by law, it is subject to strict construction by the courts, since it is the policy of the law that all property is subject to taxation, unless specifically relieved from that burden. See New York Life Ins. Co. v. Bd. of Com'rs of Okla. County, 155 Okla. 247, 9 P. (2d) 936. There is no statute relieving property from taxation by reason of its removal from one part of the state to another. Nor does such an exemption exist by reason of the fact that property is in transit on the first day of January. The law, as contained in the above-quoted statutory provisions, is so plain that a further discussion of this question is unwarranted. The property involved in this action is not exempt by reason of the fact that it was in transit on the first day of January.

Since the property owner does not claim the crude oil involved should be excused from ad valorem taxation by reason of the previous payment of the gross production tax, and since, as a matter of law, the property is not relieved by reason of the fact that it was in transit on the first day of January, we are confronted with the remaining question: Was the property taxable in Osage county? This question is necessarily interwoven with the broader question: Where was the property taxable? An answer to the first question stated necessarily involves a consideration of the second.

At common law the situs of personal property, both tangible and intangible, for the purpose of taxation, was considered to be the domicile of its owner under the maxim mobilia sequuntur personam. Many exceptions to this rule have been created by statutes and developed by judicial decisions until at the present time either tangible or intangible property may acquire a situs elsewhere for the purpose of taxation. See 26 R. C. L. page 273, par. 241; Travis v. Dickey, 96 Okla. 256, 222 P. 527; Grieves v. State ex rel. County Attorney et al., 168 Okla. 642, 35 P. (2d) 454; Standard Paving Co. v. County Board of Equalization et al., 135 Okla. 15, 273 P. 201. Independent of any consideration of the common-law maxim above referred to, it is the theory of the law in this state, as determined by reason of our statutory provisions, that tangible personal property is taxable to the owner in the county of his domicile if it has not acquired a taxable situs elsewhere. Travis v. Dickey, supra. In order to deter-

mine the circumstances under which personal property may acquire a situs at some place other than the domicile of its owner, it is essential to examine the statutes bearing upon the question of taxable situs. Section 12604, O. S. 1931, contains the following provision:

"When a person is doing business in more than one county, the property and credits existing in any one of the counties are to be listed and taxed in that county; and credits not existing in nor pertaining especially to the business in any one county are to be listed and taxed in that county where his principal place of business may be. * * *"

And section 12372, O. S. 1931, provides among other things that:

"It shall be the duty of the managing officers of every corporation to make, under oath, and deliver to the assessor of the county where its principal business is transacted, * * * a statement * * * and such statement shall show the description, the location, and assessed value of all real estate and tangible personal property owned by such corporation, listed and assessed separately in its name. The assessor shall return the sworn statement so made, with his assessment, to the board of equalization of the city, town or township, wherein said corporation is located."

The word "person," as used in section 12604, supra, includes corporations. See Standard Paving Co. v. County Board of Equalization, supra. And business property belonging to a corporation is taxable at the principal place of business of the owner within the state, unless it has acquired a taxable situs elsewhere. See Standard Paving Co. v. County Board of Equalization, supra, and Travis v. Dickey, supra. It should be observed in this connection that section 12372, supra, requires a general return by every corporation in which it shall set forth its tangible personal property and the location thereof. This general return is, by the terms of the statute, required to be made to the assessor "of the county where its principal business is transacted." Thus the Legislature has by implication designated the place where the tangible personal property of the corporation shall be taxed when it has not acquired a situs for the purpose of taxation at some other place.

From reading the foregoing statutory provisions, especially section 12604, supra, it might appear that the mere physical existence of tangible personal property in one of the several counties in this state on Jan-

uary 1st would make such property subject to taxation in that county. However, this court, in determining the legislative intent as expressed by the above-quoted sections of the statute, has decided that mere temporary existence or location of such property is insufficient to give it a taxable situs other than the domicile or principal place of business of its owner. If, however, such property is permanently or indefinitely located in a particular taxing jurisdiction, it acquires a situs there. See Standard Paving Co. v. County Board of Equalization, supra.

The foregoing rules relating to taxable situs must in this case be considered in relation to section 12583, supra, which provides that "the owner of personal property removing the same from one county, town, or district to another between January 1st and September 1st, shall be assessed in either in which he is first called upon by the assessor." The obvious purpose of this provision of the statute is to prevent property from escaping taxation when its taxable situs is changed by its owner from one county to another at any time between the dates mentioned in the statute. In order to accomplish this purpose the Legislature has seen fit to give property thus removed an alternative taxable situs, depending upon which county assessor first calls upon the owner to list and assess his property. It is self evident, however, that the words "called upon by the assessor" were not used by the Legislature in a narrow and technical sense to prevent the owner himself from listing the property in one of the counties without first being called upon by the assessor. To so construe this language would encourage property owners to refrain from listing their property for taxation. The law contemplates that the owner shall list his taxable property and the statutory provisions of this state are not to be construed to encourage an evasion of the law in this respect. Nor do the words referred to necessarily mean that the assessor is the only one who may cause the property to be assessed in case the owner fails to list the property. The assessor is the officer referred to by the statute, because, in ordinary contemplation of the law, he is the one with whom it should be listed and by whom it should be assessed. We think the words of the statute were used by the Legislature in a general sense, to mean not so much the assessor as an individual officer, but rather the taxing authorities of the particular county. It was not intended that

property subject to taxation might escape taxation, even though it be omitted property, if the assessor failed to act. Thus, we conclude that property which has changed its taxable situs by reason of its removal from one county to another between the dates above mentioned, and which has not been listed or assessed for taxation in either county, may be subject to the burdens of taxation under the procedure outlined by sections 12346 and 12348, supra, commonly known as the Tax Ferret Act. It might also be inferred from an examination of the foregoing statute that the mere fact that taxable property has been removed from one county to another between the dates above mentioned renders it taxable in the county of its origin or the county of its destination, regardless of whether it acquires a taxable situs in either of those counties. Such an interpretation of the statute would lead to absurd results and cannot be approved by this court. If the statute were so interpreted, property temporarily located in one county and having no taxable situs there might acquire a taxable situs merely by reason of its removal. To illustrate, let us suppose that A, a resident of Kay county, were visiting in Osage county on the first day of January, having with him his team and wagon which remained in Osage county throughout the day of January 1st, and, on the 2nd day of January, A journeyed to Pawnee county with his property, returning to Kay county a few days later. Obviously, the taxable situs of the property should remain in Kay county, even though it was in Osage county on the 1st day of January and was removed to Pawnee county between the days stated by the statute. In other words, it seems clear that the statute is not designed to create an alternative taxable situs of the personal property merely by reason of its removal from one county to another, but, on the contrary, is intended to prevail only in cases where property having a taxable situs in one county is removed to and acquires a taxable situs in another county. As applied to this case the statute under consideration has no application unless the property involved herein had acquired a taxable situs in Osage county, or some other county except Pawnee county, and was actually removed from that county to Pawnee county where it acquired a taxable situs before September 1st, thus resulting in a change of its taxable situs by reason of its removal.

In this connection we are unable to determine the application of the statute by

reason of the absence of proof which fails to show the actual removal of the property to Pawnee county between the dates mentioned in the statute and which also fails to show that the property ever acquired a situs for the purpose of taxation in Pawnee county. The statute, as the proof now stands, is of no assistance in determining whether under the proof in this case the property had acquired a taxable situs in Osage county, but when the pertinent facts are established by competent evidence it may be of controlling importance.

In determining the situs of this property, the purpose of its existence in Osage county as well as the duration of time that it will probably remain there are factors of grave importance. Standard Paving Co. v. County Board of Equalization, supra. In considering this question the decisions of the Supreme Court of the United States in interstate commerce cases are of particular assistance. In the case of Kelly v. Rhoads, 47 L. Ed. 359, it was held that a flock of sheep driven through the state of Wyoming did not acquire a situs for the purpose of taxation in that state, even though the sheep were permitted to stop and graze from time to time, it being decided that the grazing was a mere incident to the transportation of the sheep through the state. In that case the Supreme Court of the United States reversed the decision of the Supreme Court of Wyoming in the case styled Kelly v. Rhoads and reported in 39 L. R. A. 594, which latter case was mentioned incidentally by this court in Standard Paving Co. v. County Board of Equalization, supra.

In the case of Eureka Pipe Line Co. v. Hallanan, 257 U. S. 265, 66 L. Ed. 227, it was decided that oil gathered by a pipe line company and flowing through pipes towards points beyond the state line was moving in interstate commerce and did not have a taxable situs within the state. In that case booster tanks were treated by the court as pipes of a larger size through which the oil passed. Similarly, in the case of Ozark Pipe Line Corp. v. Roy Monier, 266 U. S. 560, 69 L. Ed. 439, it was held that oil passing through the state of Missouri in pipe lines did not acquire a situs for the purpose of taxation in that state. See, also, Champlin Realty Co. v. Brattleboro, 260 U. S. 366, 67 L. Ed. 309. It may be mentioned, however, in this connection, that the mere fact that property in storage is intended to be transported to some other place at a later date does not necessarily prevent the property from retaining or acquiring a taxable situs for the purpose of taxation in the place where it is located. See Kelly v. Rhoads (U. S. Sup. Ct.) supra., and cases therein reviewed. See, also, Bacon v. Illinois, 227 U. S. 504, 57 L. Ed. 615, and State ex rel. Hirschi, Co. Atty., et al. v. Empire Oil & Ref. Co., 171 Okla. 138, 42 P. (2d) 127.

In the case at bar the existence of the property in question in Osage county on the 1st day of January is established by the stipulation. However, it is also shown in connection with its existence in that county that it was at the time in transit to another county. Under the foregoing authorities the fact that it was in transit negatives the idea that it had a taxable situs in Osage county on the date mentioned. It may or may not have had a situs there previous to the time it started on its journey. If it did and if its journey to Pawnee county was completed, and if upon its arrival at its destination it acquired a situs there, it would be taxable in either county.

If, on the other hand, this property, although originating in Osage county, immediately entered into the channels of intrastate commerce upon its severance from the soil and never acquired a situs in Osage county by reason of its existence there, its status for the purpose of taxation during its sojourn in Osage county would be at the principal place of business of its owner in the state, if its owner is a corporation (another fact which is not shown by the record in this case). If it were then removed from Osage county to Pawnee county and acquired a situs in the latter county by reason of its location or use there, and such removal and change of situs were accomplished between the 1st day of January and the 1st day of September, it would be subject to taxation either in the county where the principal place of business of its owner was located or in Pawnee county, its destination.

If the property never acquired a taxable situs in either Pawnee or Osage county, it would be taxable at the principal place of business of its owner, assuming its owner to be a corporation.

We therefore hold in this case that the mere existence of this property in Osage county on the 1st day of January, accompanied by proof that the property at that time was in transit, is insufficient to establish a taxable situs in Osage county, and that the proof introduced in this case

is insufficient for us to determine where the taxable situs was. The cause is therefore remanded to the trial court, with directions to determine under the rules herein announced whether the property involved was taxable in Osage county, and if the property is found not to have been taxable in that county, the trial court will enter its judgment dismissing the proceedings without prejudice to the right of the proper taxing authorities in any other jurisdiction to maintain appropriate proceedings to list and assess the property.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, WELCH, CORN, and GIBSON, JJ., concur. PHELPS, J., disqualified.