## NEW YORK LIFE INS. CO. v. BOARD OF COMRS OF OKLAHOMA COUNTY.

No. 19776. Opinion Filed March 8, 1932.

Wilson & Wilson, for plaintiff in error.

Geo. M. Callihan, Co. Atty., and I. L. Harris, Asst. Co. Atty., for defendant in error.

C. W. King, for Oklahoma Tax Commission, amicus curiae.

McNEILL, J. This is an appeal from the district court of Oklahoma county, involving the question of whether or not a tax may be assessed on an ad valorem basis against the office furniture of the New York Life Insurance Company, plaintiff in error, a foreign insurance company, licensed to do business in this state, when such furniture is used solely in its business of soliciting, operating, and writing life insurance. The parties will be referred to as they appeared in the trial court.

It appears from the record that there was assessed on the tax rolls against said plaintiff a valuation of $500 for the year 1926, on account of its ownership of certain office furniture, and that an ad valorem tax had been levied thereon for said year at the current rate, amounting to the sum of $23.08; that plaintiff presented its petition to the board of county commissioners of Oklahoma county for the remission and cancellation of said tax and contended that it had paid its annual tax of two per cent. on all premiums collected in the state of Oklahoma for the year in question; that, by reason of the provisions of section 6687, C. O. S. 1921, this office furniture, which was used solely for the purpose of transacting its business, was exempt from the payment of said ad valorem tax, and that the assessor of said Oklahoma county was without authority under the provisions of said statute to spread the valuation of $500 upon the tax rolls for ad valorem assessment for said year.

The record further shows that plaintiff had paid to the Insurance Department of this state for the year in question a license fee of $3 each, for 146 agents, a total of $438; that during the same year it had filed its report with the State Insurance Commissioner, showing that it had collected a total of $2,615,504.41, in premiums from Oklahoma policyholders, and had returned $565,005.55 to policyholders in the state of Oklahoma, in payment of dividends; that it had paid $25,521.99 as premiums on that portion of its Oklahoma business that had been reinsured, leaving a balance as the net premiums of $2,174,986.87, against which had been levied a two per cent. gross premium tax, amounting to $42,499.54, which

had been paid to the State Insurance Commission. In addition thereto, the company had paid its annual entrance fee to the Insurance Department in the sum of $200.

The board of county commissioners denied plaintiff the relief prayed for in its petition, and an appeal was perfected therefrom to the district court of Oklahoma county. The district court affirmed the action of the board of county commissioners, and plaintiff has duly perfected its appeal therefrom to this court.

It is the theory of the plaintiff that its office furniture, located in the county of Oklahoma, assessed in the instant case, and used solely in the transaction of its insurance business within this state, is not taxable; that when a foreign insurance company pays the entrance fee, the annual two per cent. on all premiums collected in the state, and the annual license fee or tax on each local agent, all as provided for by article 19 of the Constitution of the state of Oklahoma, and section 6687, C. O. S. 1921, the payment of such fees or taxes is a substitute for ad valorem taxes and is in lieu of all other character of taxes, and that if said plaintiff is required to pay said ad valorem tax herein sought to be imposed upon it, the same would subject plaintiff to double taxation. The defendant contends that said section 6687 merely imposes a license fee or a tax upon the business of plaintiff, and has nothing to do with the ad valorem taxes upon its property; that the property in question, possessed by plaintiff, is not exempt under the statutes, nor the Constitution of the state, and that said license fees or taxes are not a substitute for or in lieu of an ad valorem tax upon the personal property of said corporation.

Sections 1 and 2 of article 19 of the Constitution of the state of Oklahoma contain the original basis for the collection of fees and the license required of foreign insurance companies. Said section 1 provides for the regulation of foreign insurance companies and the granting of a license to such company upon its compliance with the laws of the state, including the deposit of collateral or indemnity for the protection of its patrons within the state, and requiring such insurance companies "to pay all such taxes and fees as may at any time be imposed by law or act of the Legislature, on foreign insurance companies," and further providing that "refusal to pay such taxes or fees shall work a forfeiture of such license." Section 2 requires each foreign insurance

company to pay to the Insurance Commissioner an entrance fee of $200 per annum, for the use of the state, and provides that, until otherwise provided by law, such insurance company shall pay an annual tax of two per cent. on all premiums collected in the state after all cancellations are deducted, and a tax of $3 on each local agent.

The Legislature, in 1909, in accordance with the above provisions, "until otherwise provided by law," enacted under section 6687, C. O. S. 1921, said constitutional provisions of an annual tax of two per cent. on all premiums collected within the state after all cancellations and dividends to policyholders are deducted, and an annual tax of $3 on each local agent, and also incorporated in said section the following language: "and such other fees as may be paid to said Insurance Commissioner, which taxes shall be in lieu of all other taxes or fees, and the taxes and fees of any subdivision or municipality of the state."

Applicable sections of the Constitution of the state and statutes are as follows:

Article 10, sec. 5, of the Constitution of the state of Oklahoma provides:

'The power of taxation shall never be surrendered, suspended or contracted away. Taxes shall be uniform upon the same class of subjects."

Article 10, sec. 6:

"* * * That all property not herein specified now exempt from taxation under the laws of the Territory of Oklahoma shall be exempt from taxation until otherwise provided by law. * * *"

This does not include furniture of foreign corporations.

Article 10, sec. 8:

"All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value. * * *"

Article 10, sec. 12:

"The Legislature shall have power to provide for the levy and collection of license, franchise, gross revenue, excise, income, * * * production or other specific taxes."

Article 10, sec. 22:

"Nothing in this Constitution shall be held, or construed, to prevent the classification of property for purposes of taxation; and the valuation of different classes by different means or methods."

Article 10, sec. 13:

"The state may select its subjects of tax-ation, and levy and collect its revenues independent of the counties, cities, or other municipal subdivisions."

Section 9574, C. O. S. 1921:

"All property in this state whether real or personal, **including the property of corporations,** * * * except such as is exempt, shall be subject to taxation. * * *"

Section 9960, C. O. S. 1921:

"All taxable property shall be listed and assessed each year * * * on the first day of January of each year. * * *"

Section 9666, C. O. S. 1921:

"The county assessor shall, on the 15th day of January of each year, proceed to take a list of all taxable property in the county, and assess the value thereof as of January 1st. * * *"

Section 9669, C. O. S. 1921:

"The county assessor shall, on the first Monday in June, deliver all lists of property to the county board of equalization for the purpose of having them adjusted and equalized."

Section 9690, C. O. S. 1921:

"There is hereby levied annually an ad valorem tax upon all property in this state which may be subject to taxation upon such basis * * * to pay the expenses of the state government for each fiscal year. * * *"

Section 9575, C. O. S. 1921, sets forth the property which shall be exempt from taxation, and the same does not include any property of a foreign insurance corporation.

"Taxes are either (1) capitation or poll taxes, (2) taxes on property, or (3) excise taxes. The first two are generally classified as direct taxes and the third as indirect taxes. Another classification is as (a) specific and (b) ad valorem." Cooley, Taxation (4th Ed.) vol. 1, p. 118.

"An excise tax, using the term in its broad meaning as opposed to a property tax, includes taxes sometimes designated by statute or referred to as privilege taxes, license taxes, occupation taxes, and business taxes. There is no clear line of demarcation between so-called 'license,' 'occupation,' and 'privilege' taxes. In the case of corporations, such taxes are often referred to as franchise taxes.

"Sometimes the term 'license fee' is used to distinguish an exercise of the police power from an exercise of the taxing power referred to as a 'license tax'." Cooley, Taxation (4th Ed.) vol. 1, pp. 129-131.

"Another phase of the general question of statutory regulation of insurance companies which has received considerable attention at the hands of legislative bodies, is that re-

lating to taxation of such companies, it having been held that they may be subject to the payment of a license tax or fee, a franchise tax, or an excise or income tax, as well as a tax upon corporate property proper." Cyclopedia of Insurance Law, Couch, vol. 1, p. 528.

"A tax on gross premiums of insurance is a tax upon the receipts of money or its representative in notes and bills, and not on property or any article of commerce; it touches only a fund in the treasury of the company. * * * A tax law imposing a percentage on premiums of a foreign insurance company is a tax on the business, and not repugnant to the federal Constitution. * * * Percentage on the income or receipts, by agents of foreign insurance companies, imposed for the privilege of carrying on their business, is not a tax within a constitutional sense." Desty, American Law Taxation, p. 229.

Citing: Lovingston v. Board of Trustees, 99 Ill. 572; Illinois Mutual Fire Ins. Co. v. Peoria, 29 Ill. 180; Ducat v. Chicago, 48 Ill. 172; Walker v. Springfield, 94 Ill. 364.

In the case of State, to Use of City of Memphis, v. Home Ins. Co., 19 S. W. 1042, the Supreme Court of Tennessee said:

" 'The right of taxation is inherent in the state. It is a prerogative essential to the perpetuity of the government, and he who claims an exemption from the common burden must justify his claim by the clearest grant of organic or statute law.' Memphis v. Union & Planters' Bank, 91 Tenn. 546, 19 S. W. Rep. 758. Every presumption is against any surrender of the taxing power, and, if in a given case a doubt arise as to the intent of the Legislature on this subject, that doubt must be solved in favor of the state. Unless the intention to surrender is manifested by words too plain to be mistaken, the right to tax must be held still to reside in the state. Insurance Co. v. Debolt, 16 How. 435; Delaware Railroad Co. Tax Case, 18 Wall. 226; Railway Co. v. Pennsylvania, 21 Wall. 498; Farrington v. Tennessee, 95 U. S. 686; Tennessee v. Whitworth, 117 U. S. 136, 148, 6 Sup. Ct. Rep. 645, 649; Memphis Gaslight Co. v. Shelby Co. Taxing Dist., 109 U. S. 398, 3 Sup. Ct. Rep. 205; Railroad Co. v. New Orleans, 143 U. S. 195, 12 Sup. Ct. Rep. 406; Wilson v. Gaines, 9 Baxt. 551; State v. Butler, 13 Lea. 406."

See Dunham's Estate, 201 N. Y. S. 847, wherein it was said:

"The policy of the law is that all property is subject to tax unless exempt from taxation, and the statutes of exemption are strictly construed."

See, also, the case of Union Refrigerator Transit Co. v. Lynch, Co. Treas. (Utah) 55 P. 639.

In the case of In re Assessment of First National Bank of Chickasha, 93 Okla. 233, 220 P. 909, this court said:

"There must be no doubt or ambiguity in the language used upon which the claim to exemption is founded. It has been said that a well founded doubt is fatal to the claim; no implication will be indulged in for the purpose of construing the language used as giving the claim for exemption, where such claim is not founded upon the plain and clearly expressed intention of the taxing power."

In the case of Queen City Fire Insurance Co. v. Basford, 27 S. D. 164, 130 N. W. 44 (1911), the Supreme Court of South Dakota considered a question very similar to the one under consideration. The action was instituted by the fire insurance company to enjoin the collection by the Insurance Commission of 2½ per cent. tax on plaintiff's gross earnings, and to enjoin the other defendants from the collection of taxes imposed by local authorities upon the tangible property of the plaintiff. The law under which the Commission was proceeding to collect the 2½ per cent. on said insurance company provided that "every fire insurance company doing business in that state" was required at the time of making the annual statement to pay into the State Treasury as taxes 2½ per cent. of the gross amount received as premiums into the state during the preceding year, and that said sum of 2½ per cent. "shall be in full of all taxes, state and local, from such insurance company." It was contended in that case that the law was unconstitutional in that it violated certain provisions of the state Constitution relating to assessment and levy of taxes, and plaintiff contended that the 2½ per cent. specified in said section of the statute to be paid by the insurance companies was a tax levied upon said company, and that the exemption from taxation provided for was intended to include all the tangible property of the corporation, including both real estate and personal property.

On behalf of the defendant, State Insurance Commissioner, it was contended that that the 2½ per cent. provided for in the section to be paid for by insurance companies was not levied upon them as a tax in the ordinary meaning of that term, but was in the nature of an occupation or license tax imposed upon such company, and did not come within the provisions of the Constitution applicable to ordinary taxes, and that the exemption clause did not have the effect of exempting the corporation from the payment of the taxes upon their tangible property. The court in the opinion said:

"The only serious question, therefore, presented on this appeal, is as to that provision of the law which provides: 'And the said sum of 2½ per cent. shall be in full of all taxes, state and local, from such insurance company.'

"It is contended by the respondent that, under the terms of this clause of the section, the state is without power to collect further taxes upon the property of fire insurance corporations, notwithstanding they may be possessed of much real and personal property within the state, and hence in making this exemption the law is rendered clearly unconstitutional, in that the Constitution prohibits such exemption.

"It is contended, however, by the appellant that inasmuch as the Constitution makes a distinction between the taxing of corporations and taxing of corporate property, and inasmuch as it is obvious that the Legislature, in passing the act referred to, was dealing exclusively with the tax on insurance corporations and not the corporation's property, the proper construction of the clause referred to is that it relates solely to taxes on the corporations, as such, and not in any way to taxes on their corporate property. We are of the opinion that the appellant is right in this contention, and that the clause should be construed as the words clearly indicate, that the 2½ per cent. shall be in full of all corporation licenses or business taxes and does not refer nor include taxes assessable upon the property of the corporation, which, of course, must be assessed and taxed like all other real and personal property within the state. It certainly could not have been the intention of the Legislature, in the adoption of this provision, either as originally adopted or as found in the laws of 1907, to exempt an insurance corporation that had thousands or tens of thousands of dollars invested in real or personal property, that such corporation should not be assessed and taxed for such property as well as other corporations within the state.

"Section 2 of article 11 of the Constitution provides that: 'All taxes to be raised in this state shall be uniform on all real and personal property, according to its value in money, * * * so that every person and corporation shall pay a tax in proportion to the value of his, her or its property.' And by section 3 it is provided: 'The power to tax corporations and corporate property shall not be surrendered or suspended by any contract or grant to which the state shall be a party.'

"It will be observed that by the provisions of section 3 a distinction is made between the power to tax corporations and corporate property. It is quite clear, therefore, that while corporations, as such, may be required to pay an occupation or license tax and may be exempted, upon the payment of such tax, from further occupation taxes or license taxes, such exemption in no manner affects the power to tax the corporate property. Such property is to be assessed and taxed the same as property of individuals. Hence, it is quite clear that it was not the intention of the Legislature to exempt insurance corporations from the payment of taxes on their tangible corporate property, but only to exempt the corporation, as such, from the payment of further occupation or license taxes, either to the state or municipalities, as the language of the section, 'shall be in full of all taxes, state and local, from such insurance company.' Thus limited, the exemption was clearly within the power of the Legislature, and the clause, construed as evidently intended it should be, is not unconstitutional."

In the case of Millers' Mut. Fire Ins. Co. v. City of Austin, the Court of Civil Appeals of Texas, 210 S. W. 825, the city of Austin instituted suit against the Millers' Mutual Fire Insurance Company to recover certain taxes alleged to be due on property owned by said company in the city of Austin. The company claimed that it was exempt from all further taxation of any character on any property, real, personal, or mixed, in the state of Texas, under section 10, c. 109, Acts of 1903, which provided:

"Each and every mutual insurance company operating under this act shall pay to the Insurance Commissioner annually on the 31st day of December, one-half of one per cent. of all the gross premiums received during the year, and no other tax shall be required of such mutual insurance companies, their officers and agents, except such fees shall be paid to the Commissioner of Insurance as is required by law."

That court held that the Acts of the 28th Legislature, said section 10, providing that mutual insurance companies operating under the act shall pay gross premium tax, and that "no other tax shall be required" of them, provides for an occupation tax, and not an ad valorem tax on property, and the exemption or commutation of other taxes applies only to occupation, and not to ad valorem taxes. The court in the body of the opinion says:

"The contention is that the words 'no other tax' were intended to and do cover all taxes, occupation, ad valorem, or otherwise, and under such contention the insurance company might purchase land and erect very valuable office buildings in every city in Texas where it desired to do business, and not only would the state of Texas, but municipalities in which the property was situated, be precluded from taxing it. We cannot imagine that any such legislative intention existed, but, if it did, it would be clearly an exemption from taxation of the rankest kind, and plain-

ly violative of the provisions of article 8, sec. 2, of the Constitution, which, after enumerating property which may be exempted from taxation, provides that:

" 'All laws exempting property from taxation, other than the property above mentioned, shall be null and void.'

"It has been held by a number of courts, both federal and state, that:

" 'Where a certain sum is specified for a certain percentage upon valuation, or upon receipts or acquisitions in any form, this is in the nature of a commutation of taxes, the state agreeing that the sum named is, under the circumstances, a fair equivalent for what the customary taxes would be, or the fair proportion which the person bargained with ought to pay, and the power thus to commute, though liable to abuse, is undoubted.' Cooley, Taxation, p. 110.

"It is also held that the 'commutation,' to employ the tenderer term than 'exemption,' must clearly appear from the terms of the law, and it cannot be extended by construction or implication beyond the clear import of its terms. There must be no room for doubt or controversy. As said by the Supreme Court of the United States, in Railroad v. New Orleans, 143 U. S. 192, 12 Sup. Ct. 406, 36 L. Ed. 121:

" 'Exemption from taxation is never to be presumed. The Legislature itself cannot be held to have intended to surrender the taxing power, unless its intention to do so has been declared in clear and unmistakable words.'

"The tax provided for in the law of 1903 is undoubtedly a tax allowing mutual insurance companies to pursue their business in Texas, an occupation tax, and it is not an ad valorem tax on property. A similar tax on railroad companies has been held to be an occupation tax by the Supreme Court of this state. State v. Railway, 100 Tex. 153, 97 S. W. 71; Texas Co. v. Stephens, 100 Tex. 639, 103 S. W. 481; Fire Association v. Love, 101 Tex. 376, 108 S. W. 158, 810; Life Ins. v. Love, 101 Tex. 531, 109 S. W. 863; Producers' Oil Co. v. Stephens, 44 Tex. Civ. App. 327, 99 S. W. 157. Being an occupation tax, under a strict construction of the statute, which is always applied to statutes exempting, or commuting, if such be the proper term, taxation, it must be held that the exemption applied alone to occupation taxes, and not to ad valorem taxes. The taxation of property was not in contemplation of the Legislature when the exemption from further taxation was granted, but it was confining its attention to the business before it, that of fixing an occupation tax, and providing that no further such tax should be collected by state. It has no reference to ad valorem taxes. Any other construction of the statute would render it discriminatory and unconstitutional and void. * * *

"So, if the Legislature by the act of 1903, commuted the taxes of insurance companies, its act was unconstitutional and void so far as the commutation was concerned. However, we do not think an exemption from ad valorem taxes was contemplated. * * * But we hold that full occupation taxes are required by the statute, and there was no effort to exempt from other taxes.

"Appellant cites a number of cases from other states bearing upon the point at issue, but none of them that is accessible to this court was delivered under a statute with language similar to that in the Texas statute. In the statutes we have examined there was a specific exemption from all other taxes, naming the kind of taxes. There could be no doubt as to what was meant by the Legislature in those cases. Even in the Oklahoma case of In re Wolverine Oil Co., 53 Okla. 24, 154 P. 362, L. R. A. 1916F, 141, so confidently relied on by appellant, who says that the statute provided for a tax 'in lieu of all other taxes,' the Supreme Court of Oklahoma held the statute provided 'that the payment of the gross production tax shall be in lieu of any other tax that might be levied * * * on said property upon an ad valorem basis.' The difference is apparent. So it is in the other cases examined by this court. In all the cases it is also stated that the acts of the Legislature were sustained because they levied taxes appearing to be a fair equivalent for the customary taxes. People v. Coleman, 121 N. Y. 542, 25 N. E. 51; State v. Ill. Central R. Co., 246 Ill 188, 92 N. E. 814; Gas Co. v. Roberts, 168 Cal. 420, 143 P. 700: Bank v Worrell, 67 Miss. 47, 7 South. 219."

The aforesaid section 6687, C. O. S. 1921, was considered by this court in the case of New York Life Insurance Co. v. Town of Comanche, 62 Okla. 247, 162 P. 466, but that opinion has no application to the question involved in the instant case. In that case the question was whether or not it was lawful for a municipality to impose a license fee or tax upon a life insurance agent for a foreign life insurance company, which company had paid the annual tax provided for by section 3426, R. L. 1910 (section 6687, C. O. S. 1921). The court held that any foreign life insurance company which pays a tax contemplated by said section of the statute cannot be subjected to a license fee or tax by any municipality in this state.

Counsel for plaintiff urge that the construction which this court has placed upon the provisions of the gross production tax law is applicable in the instant case, and cite the following cases: In re Gross Production Tax, Wolverine Oil Company, 53 Okla. 24,

154 P. 362; Josey Oil Co. v. Board of Commissioners Payne County, 107 Okla. 266, 231 P. 272; In re Skelton Lead & Zinc Company, Gross Production Tax, 81 Okla. 134, 197 P. 495; In re Protest of Bendelari Gross Production Tax, 82 Okla. 97, 198 P. 606. An examination of these cases and the statutes under consideration therein, do not have any direct application to the question involved in this case.

The State Legislature, under article 2 of chapter 71, Session Laws 1907-8, provided for the levy and collection of a gross revenue tax from public service corporations in this state and from persons, firms, or associations engaged in the mining or production of coal, asphalt, or ores bearing lead, zinc, jack, gold, silver, or copper, or of petroleum or other mineral oil or of natural gas. Said act provided:

"Every corporation * * * shall pay the state a gross revenue tax * * *. which shall be in addition to the taxes levied and collected upon an ad valorem basis upon the property and assets of such corporation equal to the per centum of its gross receipts hereinafter provided. * * *" Section 2.

Subsequently the Legislature enacted the Gross Revenue Tax, chapter 44, Session Laws 1910, being article 13 of chapter 72, R. L. 1910, on March 10, 1910, which became effective June 17, 1910, and was a complete substitute for the law of 1908, and this act also had similar provisions except that this act provided that all such taxes levied and collected should be paid into the state treasury and applied in payment of the ordinary expenses of the state government.

The Legislature in 1915, by chapter 107, Session Laws 1915, amended section 7464, R. L. 1910, in part, as follows:

"For the purpose of estimating the value of any property rights attached to or inherent in the right to mineral in this state after the same is segregated from the ore in place, and in lieu of any other method of taxing the same and in lieu of any other taxes that might be levied and collected upon an ad valorem basis upon the equipment and machinery in and around any well producing natural gas or petroleum * * * shall be taxed ad valorem in the taxing district where situated. * * *"

This section was amended by chapter 39 of the Session Laws 1916. It is specifically set forth in the title to said act that it relates:

"to the taxation of the gross production of asphalt, ores * * * and of petroleum or other crude oil or mineral oil * * * in lieu of any other method of taxing same and of certain property used in the production thereof."

In the act it is provided as follows:

"The payment of the taxes herein imposed shall be in full and in lieu of all taxes by the state, counties, cities, towns, townships, school districts and other municipalities upon any property rights attached to or inherent in the right to said minerals * * * upon the machinery, appliances, and equipment used in and around any well producing petroleum or other crude or mineral oil or natural gas, or any mine producing asphalt, or any of the mineral ores aforesaid and actually used in the operation of such well or mine."

Also:

"The State Board of Equalization, upon its own initiative, may, and upon complaint of any person who claims that he is taxed too great a rate hereunder, shall, take testimony to determine whether the taxes herein imposed are greater, or less than the general ad valorem tax for all purposes would be on the property of such producer subject to taxation in the district or districts where the same is situated * * * in lieu of which the tax herein is levied. * * *"

By this latter provision of the act a means was provided for correcting any mistake resulting from an incorrect over-valuation of the property or an excessive rate. No such provision is found in the act in question.

The act of March 23, 1927, chapter 111, Session Laws 1927, was a gross production tax upon cotton manufacturers and provided:

"The tax herein imposed shall be in full and in lieu of all taxes by the state, counties, cities, towns, townships, school districts, and other municipalities upon any property rights attached to or inherent in the property of the said cotton manufactory, and upon any buildings, machinery, engines, spindles, weaving machines, and upon any and all other machinery and appliances and equipments used in and around such cotton manufactory. * * *" Section 1.

The act also provided that:

"Any person, firm or corporation who claims that he is erroneously or excessively taxed under this act, shall have a right to make complaint before the board of county commissioners in the county in which the cotton mill is located. * * * for the equalization of taxes." Section 1.

The gross production revenue laws of 1907-8 and 1910 provided that such taxes should be in addition to the ad valorem taxes. The aforesaid revenue laws of 1915, 1916, and 1927 provided that such taxes should be in lieu of ad valorem taxes and that a portion of said gross production taxes

should be disbursed to the county treasurer of the county of the respective counties where the situs of the property from which said revenue was obtained was located. No such provision has been attempted to be made for the distribution of the license tax or fees which have been received by virtue of said section 6687, supra, or by chapter 60, Session Laws of 1923, notwithstanding such property must look to such county and the state for protection.

In the case of In re Skelton Lead & Zinc Co.'s Gross Production Tax for 1919, supra, 81 Okla. 134, 197 P. 495, this court construed chapter 39, Session Laws 1916, involving the Oklahoma gross production tax which imposed a tax on oil and gas, lead, and zinc producing companies, and held that said tax was intended as a substitute for the ad valorem property tax following the case of Shaffer v. Carter, 252 U. S. 37. Under the agreed statement of facts in the Skelton Case, supra, the taxes were estimated upon the value of the gross production of lead and zinc from the protestant's mines which were operated under leases upon restricted and unrestricted lands of the Quapaw Indians. In that case the protestant urged that the plants, machinery, and equipment were tangible property necessarily used in the operation of said leases under federal supervision, and being federal instrumentalities were not subject to an ad valorem tax; also, that the gross production tax was an occupation tax, and that the ores which were mined were the products of a federal agency, and by reason thereof were not subject to an occupation tax. In that case it was agreed that the machinery and devices which had been installed were necessary to the production of ore and the preparation of the same for market and were used exclusively for such purposes. The court held that the payment of a sum equal to 1½ per cent. of the gross value of the lead and zinc produced was merely a means or measure adopted by the Legislature for ascertaining the fair cash value of the mills, plants, machinery, equipment, and other property used in the operation thereof as a going concern; that the Legislature intended by said chapter to levy a property tax upon the mining property according to its fair cash value, and specifically pointed out how provision had been made under said chapter for the lowering of the rate of said gross production tax so that such tax would conform to the general ad valorem rate of property tax upon other property in the state. In the opinion the court said:

"Thus it appears that the sole object of the Legislature was to adopt a practicable means for ascertaining the fair cash value of these smelting plants and equipment 'as going concerns,' and to levy a 'property tax' thereon according to such value, and, deeming the gross value of the products therefrom a fair and practicable measure for ascertaining such value, it adopted such measure and levied a tax which it specifically provided should be in full and in lieu of all other taxes, and which should be no greater nor less than the general ad valorem rate of 'property tax,' upon other property within the state, assessed at its fair cash value. * * *",

The Supreme Court of the United States, in the case of Shaffer v. Carter, State Auditor, 64 L. Ed. 445, 40 S. Ct. 221, held that the gross production tax, chapter 164, S. L. 1915 (section 9814, C. O. S. 1921), was intended as a substitute for the ad valorem tax, but not for the income tax, and that there was no repugnance between it and the income tax which had been protested by a nonresident of the state so as to produce a repeal by implication. The principle announced therein is applicable in the instant case.

It is to be observed that the Legislature, in 1923, enacted Senate Bill 150, chapter 60, Session Laws 1923, providing in the title to said act for the "organization of industrial, life, health, and accident insurance companies on the stipulated premium plan regulating the same." In section 13 of said act, it is provided:

"Sec. 13. The fees for examining the articles of incorporation and issuing certificates of authority to do business shall be $25 for each agent of such corporation, company, or association, licensed to do business, 50 cents per annum; provided, however, all foreign companies or associations doing business under this article shall pay an annual license fee of $3 for each agent, and shall be in lieu of all other taxes and license on said agent, and shall authorize the agent to represent the company in any part of the state."

This section of the statute is to be construed in connection with aforesaid section 6687. The two statutes are in pari materia and force and effect must be given to both if the same can be done without doing violence to either. Under said section 13, there is a plain and explicit provision that the fees therein enumerated "shall be in lieu of all other taxes and licenses on said agent." This affords additional grounds for the interpretation of the legislative intent that the license fee and agency taxes provided for in said section 6687 should not be in lieu of personal ad valorem taxes, but only in lieu

of all other licenses or privilege fees or agency taxes which might be imposed by any municipality or subdivision of the state.

Said section 6687 makes no provision for the disbursement of any of such tax or fee to any county of the state where such property is located, and which such county and state is obligated to safeguard and protect.

It is also to be observed that there is a total absence of the designation of any specific property, even by inference or reference, as was set forth in the aforesaid gross revenue measures.

To follow the reasoning advanced by plaintiff would be to read into the language of said section 6687 another and different meaning than was intended thereby, and it would, in effect, remove all tangible personal property, possessed by a foreign insurance company and which has obtained a situs in this state, from taxation. The words of the statute are not exemptive words, but are limitations on the right of a city or any other municipality or subdivision of the state from levying and collecting any further license, privilege, occupation fee, or tax on a foreign insurance company licensed to do business within the state.

It is apparent from the provisions of the Constitution and kindred statutory provisions relative to taxation and revenue that the Legislature was not attempting in any manner, way, or means to exempt foreign insurance companies from payment of a property tax. Said section has no reference to any valuation of property. It is foreign and remote to this subject, and the declaratory words, "in lieu of other taxes or fees and the taxes and fees of any subdivision or municipality of the state," should not be construed strictly so as to provide an exemption, but such terms should be given a fair and reasonable interpretation. No implication will be favored in construing the language of the Constitution or statute to favor an exemption from taxation. Exemptions from taxation are to be strictly construed, and in such construction and interpretation of the language used there must be no ambiguity, doubt, or reasonable controversy as to its intent, purpose, and meaning, for such uncertainty and doubt must be resolved against the exemption of taxes, for the Legislature has been enjoined by the Constitution not to surrender, suspend, or contract away the power of taxation. Under section 9574, C. O. S. 1921, the Legislature has provided that all property in this state, whether real or personal, including the property of corporations, except such as is exempt, shall be subject to taxation.

The state reserves the right to prohibit foreign insurance companies from doing business within the state, and it may regulate, prescribe, and impose any burdens, terms, or conditions it chooses, reasonable or unreasonable, in giving its assent to such corporation to engage in business within the state. Herbring v. Lee, State Ins. Com. (Ore.) 269 P. 236. A corporation has no legal existence beyond the limitations of the sovereignty where it is created. Hall v. Virginia, 8 Wall. 168; Ducat v. City of Chicago, 10 Wall. 410.

In the case at bar no lump sum is designated as a license fee or privilege tax for the purpose of transacting business within the state. It seems manifest that a certain per cent. of the premiums collected by a foreign insurance company is an equitable mode of determining what burdens, license fee, or privilege tax should be charged to said corporation for the right or privilege to do business within the state. Walker v. City of Springfield, 94 Ill. Rep. 364. The state has the power to impose these conditions, which are subject to no constitutional limitation or inhibition, except that such taxes and fees "shall be uniform upon the same class or subject," and shall not be in conflict with the federal Constitution.

In reference to the contention of plaintiff that the property in question should be exempt by reason of departmental construction placed upon the statute in question, suffice it to say that the Supreme Court of the United States, in the case of Keokuk & W. R. Co. v. State of Missouri, 152 U. S. at page 316, says:

"* * * It could never be tolerated that the state should be forever barred in the collection of its taxes by an erroneous decision. * * *"

We conclude that it is unnecessary to further discuss the questions presented by plaintiff. In view of the foregoing, the judgment of the trial court is affirmed.

LESTER, C. J., and CLARK, V. C. J., and RILEY and KORNEGAY, JJ., concur. HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., dissent.