SEALED POWER CORPORATION *v.* STOKES.

(*Nashville*, December Term, 1938.)

Opinion filed April 1, 1939.

494

CORNELIUS, McKINNEY & GILBERT, of Nashville, and HAROLD W. CHARTER, of Muskegon, Mich. (JOSEPH H. BALLEW, of Nashville, of counsel), for complainant.

ROY H. BEELER, Attorney-General, and DUDLEY PORTER, JR., and EDWIN F. HUNT, Assistant Attorneys-General, for defendant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is a suit to recover State taxes paid under protest. Complainant is a foreign corporation which confines the business it does in Tennessee to that described in Section 1 of Chapter 106, Public Acts of 1937, namely, the storage of goods in and distribution thereof from a public warehouse owned in Tennessee, for the purpose

of convenient delivery of such goods in consummation of interstate sales as made.

Section 2 of this Act relieves a foreign corporation, confining its business in Tennessee within the limits prescribed in Section 1, from the obligation to file a copy of its charter with the Secretary of State and pay the required $300 fee; provided, it designates an agent on whom process may be served and files his name and address with the Secretary of State, and pays a fee of $20 for the filing.

Section 3 provides, with the quite apparent purpose of making it clear that the exemption from taxation provided by this Act is limited to that specified in the preceding Section, ''That nothing in this Act shall be construed as exempting any foreign corporation, or its property from liability for any ad valorem, excise, privilege, or other tax applicable to any of its transactions within the State of Tennessee, other than as is herein provided,'' that is, by the foregoing Section 3, wherein alone any exemption is in terms provided.

Franchise and excise taxes were demanded of complainant, refused, paid under protest, and this suit brought to test its liability, the theory of complainant being that, on the facts above stated, and having complied with the provisions of Section 2, it is exempt from excise and franchise taxes, as well as from the filing fee.

The Chancellor overruled the State's demurrer challenging the right to a recovery of the taxes paid and the State has appealed.

We do not understand complainant below to deny liability for the taxes involved, but for the alleged excluding provisions of Chapter 106, *supra*, for it appears to be well settled that a foreign corporation (unless ex-

cused by this Act), carrying on in Tennessee the business being carried on by complainant, is doing an intrastate business subjecting it to liability for the franchise and excise privilege taxes, now set forth in Chapter 100, Public Acts of 1937, Section 1316 *et seq.* of the Code, as amended by Chapters 99, and 176, of the Public Acts of 1937. *American Steel & Wire Co.* v. *Speed,* 110 Tenn., 524, 525, 75 S. W., 1037, 100 Am. St. Rep., 814; *American Steel & Wire Co.* v. *Speed,* 192 U. S., 500, 24 S. Ct., 365, 48 L. Ed., 538; *General Oil Co.* v. *Crain,* 209 U. S., 211, 231, 28 S. Ct., 475, 52 L. Ed., 754, 766; *Sonneborn Bros.* v. *Cureton,* 262 U. S., 506, 509, 43 S. Ct., 643, 67 L. Ed., 1095, 1097.

The question presented calls for construction of this Act as a whole, including its caption, and it is, therefore, necessary to quote it, as follows:

"An Act to further define what shall not constitute doing business in Tennessee by any foreign corporation, and to exempt any foreign corporation confining its business operations in Tennessee, within the limitation of the definition herein provided, from the requirements of filing its charter in the office of the Secretary of State or otherwise qualifying or becoming domesticated in the State of Tennessee.

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, That neither shall the ownership by any foreign corporation of goods, wares or merchandise which may be stored or brought to rest in public warehouses owned, controlled or operated within the State of Tennessee by any individual partnership or corporation qualified to do business in Tennessee, nor shall the delivery or distribution of such goods, wares or merchandise in consummation of contracts of sale made by

such foreign corporation outside of the State of Tennessee, or other agreements made in relation to such goods, wares or merchandise by such foreign corporation outside of the State of Tennessee, be construed, deemed or treated as doing or attempting to do business by such foreign corporation in this State.

"Sec. 2. Be it further enacted, That no such foreign corporation organized or chartered under the laws of any other State and/or Country, and confining its business operations in Tennessee within the limits of the foregoing Section 1, shall be required to qualify to do business in this State by filing its charter in the office of the Secretary of State or to pay the privilege tax or fee of Three Hundred Dollars ($300.00) required to be paid by foreign corporations under Section 2 of Chapter 13 of the Public Acts of the Extraordinary Session of 1929 of the General Assembly of Tennessee. But any such foreign corporations shall be required to appoint and designate in writing an agent for the service of process upon it in all actions or suits brought against it in the Courts of this State: Said designation of the name and address of such agent shall be filed in the office of the Secretary of State who shall be paid a fee of twenty dollars ($20.00) for the filing of same. And such foreign corporations shall be subject to process in all actions and suits against them as provided in said Chapter 13 of said Extraordinary Session of 1929.

"Sec. 3. Be it further enacted, That nothing in this Act shall be construed as exempting any foreign corporation, or its property from liability for any ad valorem, excise, privilege, or other tax applicable to any of its transactions within the State of Tennessee, other than as is herein provided."

We understand the substance of the theory of complainant to be that, since its business in this State is confined within the limits fixed by the terms of Section 1 of Chapter 106, and since that section provides that the doing of this business shall not be "construed, deemed or treated as doing or attempting to do business . . . in this State," no tax liability can arise out of the business so done.

On the other hand, the substance of the State's reply is that the purpose and proper scope of the Act, as indicated by its caption and the recitals of Sections 2 and 3, is to relieve foreign corporations confining their business within the limits set forth in Section 1, from filing copies of their charters and the payment of the fixed $300 fee incident thereto; and, with direct reference to the issue here presented, the State stresses the express and unequivocal limiting provisions of Section 3.

The decree overruling the State's demurrer thus expresses the views of the Chancellor:

"The Court is of opinion that Chapter 106 of the Public Acts of Tennessee for the year 1937 had as its primary purpose the defining of 'doing business' in Tennessee, in order to limit and restrict the application of previous Court decisions defining the phrase 'doing business' and to exempt from the application of such Court decisions the transactions mentioned and described in Section 1 of the Act; further, that the Act having declared in Section 1 that the transactions described should not 'be construed, deemed or treated as doing or attempting to do business by such foreign corporation in this State' engaging only in the transactions mentioned and described in Section 1 of the Act, the purpose and intention of Section 3 of the Act was simply to express the

legislative intention of not exempting from applicable taxes any transactions by such foreign corporation outside of and beyond those mentioned and described in Section 1.''

■ The question presented is not free from difficulty and this view has plausibility, but we think undue decisive weight is given the language quoted by the Chancellor from Section 1, when the Act as a whole is considered. The case is peculiarly within the rule which requires that an Act shall be construed as a whole. The specifications of its purpose set forth in Section 2 are apparently expressive of its dominant purpose, and limitation thereto is strongly emphasized by the recitals of Section 3.

■■ We are unable to escape the conclusion that the dominant purpose of this Act was to relieve foreign corporations confining their transactions in Tennessee within the narrow limits fixed by the definition in Section 1 from the manifest hardship of paying a filing fee charge wholly out of proportion to the volume of business done, or the profits possible to earn thereon. Here is to be found justification for what otherwise would work a discrimination and inequality in taxation. This limitation of volume is a natural incident of the limitation fixed in the definition, and is illustrated in the instant case, where the bill shows that the amount of the disputed taxes complainant has been required to pay,—percentages on net annual earnings,—was but $14.10 for 1936, $20.40 for 1937, and $112.94 for 1938.

A fundamental distinction exists between the method, or basis, of the franchise tax and that of the tax or charge which this Act exempts from. The one is determined wholly by the volume of the corporation's transactions,

the other without regard thereto. One is flexible, and the other predetermined and arbitrary in amount. Classification and exemption is obviously justifiable in the one case, while not in the other. That tax,—the franchise and excise,—which is determined by the volume of transactions, permits of no exemptive discrimination, while those presumed to have total transactions so small that the filing tax would inflict an unreasonable burden might fairly be excused therefrom.

We think an analysis of this Act indicates recognition of this principle.

The caption defines the limited transactions which shall entitle a corporation coming "within the limitation of the definition" to exemption from the filing charges. That is its purport.

Section 1, consistently therewith, sets out the definition, defines the classification of those being dealt with, and to be accorded the exemption, which is given by Section 2, with the condition named; and Section 3, in order that there may be no misconception of the nature and extent of the exemption, expressly excludes any exemption from other tax charges than that accorded in Section 2.

It is true that certain language employed in Section 1, and relied on here by the corporation, is so broad as to be susceptible of the construction plausibly given it for the Corporation, that so long as its business is confined to that described, it shall not be treated as doing business in this State for any taxation purpose. But this is not only expressly rebutted by the clear concluding provision of the Act (Section 3), but is inconsistent with the dominant purpose of the Act as a whole, and also inconsistent with that justifiable classification for tax

purposes which we must assume to have been within the legislative intent.

A somewhat more intensive analysis of the Act confirms the observations hereinbefore made.

██ We must assume, in order to avoid the constitutional objection of two subjects, that the "definition" is related to and designatory of the exemption provided for in Section 2, which we think is clearly the object and purpose of the Act as a whole. Looking, as it is competent to do, to the caption, or title, when construction of an act is called for, it will be seen that the object indicated is to define "what shall not constitute doing business in Tennessee" for the purpose of applying to those "within the limitation of the definition" the particular exemption designated in the title and provided for in Section 2. It is not the *definition*, but the *exemption*, which is the object and purpose of the enactment as indicated in this caption, and confirmed by the Act as a whole.

██ It is true that Section 1 of the Act is confined to the definition of what shall not constitute doing business in Tennessee, and standing alone, might plausibly be held to create a classification of foreign corporations doing business in Tennessee free from all State taxes, as in effect contended by the appellee. But we think this definition Section must be related and limited to the specific exemption provided by the following Section, which expresses the main object and purpose of the Act. But, if Section 1 should be given the broader construction contended for, a conflict would be apparent with the express limiting and restrictive provisions of the concluding Section 3. In this situation the well settled rule applies that when, in construction of a statute, irreconcilable conflict

appears, the last section or provision controls. *Board of Park Com'rs* v. *Nashville,* 134 Tenn., 612, 185 S. W., 694; *Southern R. Co.* v. *Grigsby,* 155 Tenn., 285, 292 S. W., 3; *May Co.* v. *Anderson,* 156 Tenn., 216, 300 S. W., 12. Many authorities for this rule are cited in *Board of Park Com'rs* v. *Nashville, supra,* at page 631, 185 S. W., at page 694. And see, also, *Wade* v. *Madding,* 161 Tenn., 88, 28 S. W. (2d), 642.

█ The foregoing cases are also authority for the applicable rule of construction that specific provisions in a following section will control and limit the general and broad provisions of preceding sections. "A special provision in a statute will control a general provision which would otherwise include that mentioned in the particular provision." *Hayes* v. *Arrington,* 108 Tenn., 494, 68 S. W., 44, 46. We have here a general provision in Section 1 which, standing alone, would appear by its definition to exclude all the defined corporations from the usual consequences of having transactions in this State, including tax liability, and the charter filing requirement. But, in the succeeding Section 2 we find a special and specific exemption provided for of one requirement and liability only. In this situation the foregoing rule of construction comes into play.

█ Now passing to Section 3, the conclusion of the enactment, we find it expressly provided that, whatever might be otherwise deduced from what had been said before, and in order that there might be no misunderstanding of the nature and extent of the exemptive relief intended to be extended by the Act, "that nothing in this Act shall be construed as exempting *any* foreign corporation, or its property from liability for any ad valorem, excise, privilege, or other tax applicable to any of

its transactions within the State of Tennessee, other than [or except] as is herein provided.'' We think it obvious that the words ''as is herein provided'' refer to the only exemption expressly specified in the title and in the foregoing Section 2.

Apparently, the theory of the appellee is that the concluding words ''other than as is herein provided'' should be held to refer, not only to the specific exemption expressly provided for by Section 2, but also to that broad and general exemption which automatically results if Section 1, defining ''what shall not constitute doing business in Tennessee,'' stood alone, on the theory that, if not doing business in Tennessee, no tax could apply. This contention requires that the Act be construed as, first, exempting appellee, by the declaration in Section 1 that it is not doing business in Tennessee, from all taxation; and, second, by the specific provisions of Section 2 exempting it from the filing of its charter and payment of the incidental fee.

It seems obvious that, if it had been the intention to have Section 1 operate thus broadly, Section 2 would have been surplusage, since the greater would have included the lesser. We are unable to accept this view. As before stated, it is reasonably clear that the primary and dominant purpose of the Act viewed as a whole, was to relieve foreign corporations doing the limited business defined from the cost and fees incident to filing their charters with the Secretary of State.

In *Board of Park Com'rs* v. *Nashville, supra* [134 Tenn., 612, 185 S. W., 698], Chief Justice NEIL emphasizes the rule that a statute must be construed as a whole and uses this language, applicable here: ''Now, while it is true that the language of section 27 is very broad,

yet in arriving at the intention of the Legislature we are not confined to the literal meaning of words, certainly not to the literal meaning of words in a single section when they are in conflict with words used in a later section devoted to a special subject,'' etc. And, again, he says: ''Furthermore, as already said, the legislative intent will prevail over the literal meaning of the words or terms found in an act. *Standard Oil Co.* v. *State,* 117 Tenn., [618], 638, 100 S. W., [705], 709, 10 L. R. A. (N. S.), 1015. In the case just referred to this court said:

'' ' ''The fundamental rule,'' says Judge COOPER, speaking for this court in the case of *Brown* v. *Hamlett,* 76 Tenn. (8 Lea), [732], 735, ''of construction of all instruments is that the intention shall prevail, and for this purpose the whole of the instrument will be looked to. The real intention will always prevail over the literal use of terms. Legislative acts fall within the rule, and it has been well said that a thing which is within the letter of a statute is not within the statute unless it be within the intention of the lawmakers.'' ' ''

If the foregoing rules, which permit the Court to disregard the literal, or primary meaning of words and terms in order to reach the intent, be applied to the caption, additional light breaks on its real meaning. The opening lines read, ''An Act to further define what shall not constitute doing business in Tennessee by any foreign corporation *and* to exempt any foreign corporation confining its business operations in Tennessee, within the limitation of the definition herein provided,'' etc. Now, if for the word, ''and,'' which we have italicised, the words ''so as'' be substituted, the object of ''defining'' the business which ''shall not constitute doing busi-

ness in Tennessee'' will be related and restricted to the specific exemption which the caption proceeds to set forth. We will have but one subject, a clearly expressed purpose to exempt from the charter filing requirements, etc., foreign corporations confining their operations within the limits defined. Chief Justice GREEN, in *Caldwell & Co. v. Lea*, 152 Tenn., 48, at pages 50, 51, 272 S. W., 715, in construing a caption, adopts and justifies such a reading of the word "and." He says, "an authorized and common use of 'and' is to imply a modification of one of the connected ideas by the other," giving illustrations and concluding, "So here the words of the title following 'and' are used as a qualification of . . . the first clause." And so, in the instant case, giving this meaning to "and," we have the words preceding "and" modified and restricted in application to those that follow.

There is controversy on the briefs as to whether this Act should be liberally or strictly construed, counsel for the corporation insisting that this is not a tax exemption statute, as contended by the State, and that, therefore, the rule of strict construction in favor of the State is not applicable, but the contrary. We have not found it necessary to apply either of the alternatives of this rule of construction, but, as already indicated, hold it to be the dominant and controlling purpose of the Act to provide a specified exemption for those classified thereby. The Corporation is here claiming, not only the benefit of the exemption expressly accorded it by the Act, but also an exemption expressly denied it by the Act. In this view, it is, of course, well settled that a strict construction must be given the Act in favor of the State. *Memphis* v. *Home Insurance Co.*, 91 Tenn., 558, 19 S. W., 1042; *Memphis*

v. *Memphis City Bank,* 91 Tenn., 574, 19 S. W., 1045; *Knoxville & O. R. Co.* v. *Harris,* 99 Tenn., 684, 43 S. W., 115, 53 L. R. A., 921; *Nashville Tobacco Works* v. *City of Nashville,* 149 Tenn., 551, 260 S. W., 449; *Millsaps College* v. *Jackson,* 275 U. S., 129, 48 S. Ct., 94, 95, 72 L. Ed., 196 ("where there is room for reasonable doubt as to total or only partial exemption, the latter alone should be recognized"); *New York Life Insurance Company* v. *Oklahoma County,* 155 Okl., 247, 9 P. (2d), 936, 82 A. L. R., 1425; Sutherland on Statutory Construction, Vol. 2, Sec. 539, at p. 1002; 59 Corpus Juris, 1135; Cooley on Taxation (4 Ed.), Vol. 2, Sec. 672, p. 1403 et seq.; 25 R. C. L., 1093.

It results that the decree must be reversed and the bill dismissed.