SILVER FLEET MOTOR EXPRESS INC. *v.* CARSON *et al.*

(*Nashville,* December Term, 1948.)

Opinion filed March 11, 1949.

JOHN K. SKAGGS, JR. and WILLIAM MELLOR, both of Louisville, Ky., and WALKER & HOOKER, of Nashville, for appellant.

ROY H. BEELER, Atty. Gen., WILLIAM F. BARRY, Sol. Gen., HARRY PHILLIPS, Asst. Atty Gen., and HORACE OSMENT, County Atty. of Davidson County, for appellees.

MR. JUSTICE GAILOR delivered the opinion of the Court.

This appeal presents three consolidated causes brought against the Commissioner of Finance and Taxation and the County Court Clerk of Davidson County, to recover certain motor vehicle registration fees, Code sec. 1166.30, paid under protest by the Motor Express Corporation.

After proof was taken and a hearing had, the Chancellor upheld the validity of the tax and the Motor Express Corporation has appealed.

For the tax years involved, there was a reciprocal agreement, Code sec. 1152.7a, between the States of Tennessee and Indiana, exempting certain motor vehicles owned by residents and citizens of the two States from paying the aforesaid registration fees. The gist of the present controversy is that the Motor Express Corporation insists that for certain motor vehicles operated by it, it is entitled to exemption under this agreement, and that the Commissioner has refused to allow the exemption. The pertinent clause of the agreement is as follows:

"This agreement shall only apply to persons, firms, and corporations who are now legal residents or who hereafter may become legal residents of the said reciprocating States authorized to engage or engaged in the operation of motor vehicles in interstate commerce only when such vehicles have been duly licensed in the State which is a party to this agreement and of which the owner is a resident. Corporations will be entitled to the benefit of this agreement only when they maintain their principal and general office in one of the reciprocating states. It is further provided that this agreement shall apply only to trucks operating for hire in interstate commerce when such trucks are operated from Indiana into or through Tennessee and from Tennessee into or through Indiana."

■ Since this is a suit by a taxpayer claiming an exemption, the taxing statute and subsidiary agreement will be construed strictly against the taxpayer and in favor of the State's power to tax, and no exemption

will be granted by implication. *Hamilton Natl. Bank* v. *McCanless*, 176 Tenn. 570, 144 S. W. (2d) 768; *Sealed Power Corp.* v. *Stokes*, 174 Tenn. 493, 127 S. W. (2d) 114; *Railroad Co.* v. *Harris*, 99 Tenn. 684, 43 S. W. 115, 53 L. R. A. 921.

■ Findings of fact by the Chancellor are conclusive in this Court if there was material evidence to support them. *Smith* v. *Grizzard*, 149 Tenn. 207, 259 S. W. 537; *Boshears* v. *Foster*, 154 Tenn. 494, 290 S. W. 387; *Joest* v. *John A. Denie's Sons Co.*, 174 Tenn. 410, 126 S. W. (2d) 312.

■ As we construe the foregoing paragraph of the reciprocal agreement as it is to be applied to this taxpayer, it is necessary for the taxpayer to show, in order to show that it is entitled to the exemption claimed, the following three things:

(1) That its principal and general office is in the State of Indiana;

(2) That the motor vehicles on which the exemption is claimed were engaged exclusively in interstate commerce;

(3) That the said motor vehicles were operated only from Indiana into or through Tennessee, or only from Tennessee into or through Indiana.

All three of these propositions were found by the Chancellor against the contention of the Motor Express Corporation.

■ ■ To establish that its "principal and general office" was in Indiana was the first proof necessary to entitle Complainant to the exemption claimed. The words "principal and general office" are presumed to be used with their usual ordinary and accepted meaning. *Sanford Realty Co.* v. *Knoxville*, 172 Tenn. 125, 110 S. W. (2d) 325; *O'Neil* v. *State*, 115 Tenn. 427, 90 S. W. 627, 3

L. R. A., N. S., 762; *Cherokee Brick Co.* v. *Bishop,* 156 Tenn. 168, 299 S. W. 770, so that the burden was on Complainant to show that the largest volume and percentage of its business, administrative affairs, correspondence and finance was conducted in and from Seymour, Indiana, and not as the State contended, in and from Louisville, Kentucky.

The great weight of the evidence supported the State's contention. Complainant has only two or three employees in Seymour, and 70 or more at its office and terminal in Louisville. The complainant has a large and busy office and terminal in Louisville. It has no separate office in Seymour, but shares space there in an office rented with other corporations controlled by the same family which owns control of Complainant. All books of account and correspondence are kept in Louisville. Only the stock books and minutes of directors and stockholders are kept in Seymour. The principal bank account is kept and all the principal, active officers live in Louisville. Clearly, there was clear and convincing evidence to support the Chancellor's finding that the "principal and general office" was in Louisville, Kentucky. On this phase of the case he said:

"Numerous exhibits in this record show that the company designated Louisville, Kentucky as the place where it maintained its principal and general offices.

"One cannot examine all of this mass of literature published by the complainant, in which it designated Louisville as its general office, without being impressed that the officials of the company regarded such as being true.

"It is conclusively shown that complainant had its principal and general office at 216 East Pearl Street.

Louisville, Kentucky, during the years 1941 and 1942, because claims were filed with the State of Tennessee for a refund of motor vehicle registration fees and taxes, signed and sworn to by C. J. Buhner, Secretary of the company, and attached thereto was an affidavit of E. J. Buhner, President, stating that 'Silver Fleet Motor Express, Inc., maintains its principal office at Louisville, Kentucky, and operates its trucks from Louisville through Tennessee to Birmingham, Alabama, and from Louisville to Nashville, Knoxville and Chattanooga, Tennessee'.

''These claims for refund were made upon the ground that Silver Fleet Motor Express, Inc., was entitled to the benefits of a Reciprocal Agreement entered into in October, 1939, between the States of Tennessee and Kentucky. As a part of the affidavit by the Secretary, it was said:

'' 'The taxpayer, therefore, asks refund of said taxes, in that they have been erroneously and illegally collected by the County Court Clerks of the indicated counties, inasmuch as it is entitled to the provisions of the reciprocal agreement, it being a resident, and maintaining its principal and general office at 216 East Pearl Street, Louisville, Kentucky.'

''The proof shows clearly that there has been no substantial change in the operations of the company since the above claims were filed, so as to justify the contention that the principal and general offices of the company were moved from Louisville to Seymour, Indiana.

''It is true that on March 15, 1945, the Board of Directors of The Silver Fleet Motor Express, Inc. (the Indiana corporation), adopted a resolution reciting that the principal and general offices of the company be desig-

nated on the records of the Company as Seymour, Indiana. This resolution, together with the fact that the stockholders, consisting of the Buhner family, make an annual or·an occasional pilgrimage to their old home at Seymour, for the purpose of holding a stockholders' meeting, together with the few other circumstances which are urged upon the Court and upon this State as being sufficient to conclude the proposition of residence in complainant's favor, do not appeal to the Court as being anything more than a belated attempt to get in under the Indiana Reciprocal Agreement after the Kentucky agreement was held to be invalid by the Kentucky Courts. The Court agrees with complainant's original insistence that they were residents of Louisville, Kentucky, with the principal and general offices there.''

■ Not only are these findings of fact supported by material evidence, but we find no material evidence to controvert them.

■ To support their appeal, the Complainant relies heavily on *Grundy County* v. *Tennessee Coal, etc. Co.,* 94 Tenn. 295, 307, 29 S. W. 116, where it was held that the situs for *ad valorem* taxation of corporate intangibles is, in the absence of other controlling charter or statutory provision, at the place fixed for the regular meetings of the stockholders. From the statement of facts in the opinion, the Corporation had a number of offices in and out of Tennessee, where it did a substantial or greater part of its business. By the authorities (Desty on Taxation and Welty on Assessments) cited to support its holding 94 Tenn. pages 308, 309, 29 S. W. page 119, this Court limited the decision to determination of the proper place or situs for assessment of *ad valorem taxes.* In the

present case there is no question of *ad valorem* taxes, the registration fees laid on motor vehicles are privilege taxes as appears from the statute, Code sec. 1166.28 *et seq.*, and as held in numerous cases. *Ogilvie* v. *Hailey*, 141 Tenn. 392, 210 S. W. 645; *Frazier* v. *Lindsey*, 162 Tenn. 228, 36 S. W. (2d) 436.

There is a further and more compelling distinction between the facts of the *Grundy County case, supra*, and the record in the present case as it is presented to us, and that is the question of *bona fides*. We think the formal designation of Seymour, Indiana, as the principal office and place of business of this corporation is a mere subterfuge with no appearance of good faith or other purpose than the evasion of taxation. Our holding that the general office and principal place of business of the corporation was Louisville, Kentucky, and not Indiana, disposes of the case, but we will examine briefly the proof by the complainant of the two further requirements made in the reciprocal agreement which were necessary for Complainant to prove to show itself entitled to the exemption claimed:

"It is further provided that this agreement shall apply *only to trucks operating* for hire *in interstate commerce* when such trucks are operated *from Indiana* into or through Tennessee and *from Tennessee* into or through Indiana." (Italics ours.)

Though the language used, "from Indiana" and "from Tennessee" justifies a construction that the only permissible points of origin were Tennessee and Indiana, it is unnecessary to apply this strictness of construction because it is clearly shown by the testimony of the witness Dowd for the Complainant,—and he was the only witness who testified on this point,—that much

of Complainant's business done with the motor vehicles on which the exemption is claimed, is not transportation through Tennessee or Indiana. Further, it appears from the testimony of the same witness, as well as from the testimony of the witness D. R. Henley for the State, that the Complainant is engaged in what we hold to be an intrastate operation in Tennessee.

Complainant maintains four terminals and services 37 towns and cities in Tennessee. It sought and obtained permission from the Interstate Commerce Commission to maintain a local delivery service on intermediate and off-route points within an area of five miles from Nashville and five miles from Chattanooga. In substance, Complainant's only witness on the point, Dowd, testified that while the Complainant would not pick up a piece of freight, for example, in Nashville for delivery in Chattanooga, or in Nashville for delivery in Knoxville, that if the point of destination was Atlanta, or some other southeastern destination outside Tennessee, that Complainant would pick up the freight at Nashville, transport it to Chattanooga or Knoxville, and there deliver it to an interstate carrier for transportation and delivery to the final destination. Clearly, this operation is in competition and identical with the operation of intrastate carriers in Tennessee. Mr. Henley for the State, testified that such was the conclusion of his department.

Dowd failed to testify that all shipments in which the motor vehicles in question were operated passed through either Tennessee or Indiana, but he admitted that operations of the Complainant were widespread and by no means confined to Tennessee and Indiana, but included Illinois, Kentucky, Ohio, Alabama and Virginia. We find that the evidence of Henley and Dowd supplied ample

material evidence for the holding of the Chancellor, that the operation of the Complainant in Tennessee was not entirely and exclusively interstate, and that further, it was not shown that all shipments in which the motor vehicles in question were used were through Tennessee or through Indiana.

▮ Finally, it is insisted by Complainant, that certain of the motor vehicles on which the registration fee has been assessed should be exempted because they were owned by the Defense Plant Corporation and leased to the Complainant. There is no merit in this contention for two reasons:

(1) By the express terms of Complainant's contract with the Defense Plant Corporation, it agreed to pay all taxes assessable on the vehicles in question, and

(2) The incidence of the Tennessee tax on which the registration fees are claimed is not upon the *owner*, but on the *operator* of the vehicles to be taxed. The language of the taxing statute is as follows:

"Every person, firm or corporation operating a freight motor vehicle for hire and who is required by law to obtain a permit, a certificate of convenience and necessity or other form of permission from the interstate commerce commission or the railroad and public utilities commission, who shall operate a freight motor vehicle as herein defined over the roads of this state; shall first register such vehicle with the department of finance and taxation and shall pay therefor a fee as follows:" etc. Williams Code, 1947 Cumulative Pocket Supplement, section 1166.30.

For the reasons stated, the able opinion of the Chancellor and the decree entered thereon, are affirmed at the Appellant's cost.

All concur.