## WILSON, Trustee, v. STATE.

No. 22458.   Oct. 2, 1934.

Wilcox & Swank, for plaintiff in error.

Ernest F. Jenkins, County Atty., and C. C. Suman, for defendant in error.

WELCH, J. This cause arose out of a proceeding by the tax ferret of Payne county, before the county treasurer, under sections 12346-12350, O. S. 1931, to assess for ad valorem taxation for the year 1930, as omitted property, 100,000 barrels of oil, located in Payne county, and in the custody of John Wilson as trustee on and after January 1, 1930. After notice and hearing, the county treasurer found that the oil was "omitted property" within the meaning of the law, and was of the total value of $70,000, and he ordered the oil assessed at that value for the year 1930. An appeal was taken to the county court, and following trial, that court likewise found that on January 1, 1930, John W. Wilson, as trustee, owned and had in his possession in Payne county the 100,000 barrels of oil of the value of $70,000, and that the same had not been assessed for ad valorem taxation, and was liable for taxation, and that it was "omitted property"; and that court likewise ordered the assessment of the oil for taxation for 1930 at that value. It is from that order and judgment of the county court that this appeal is taken.

In the trial court the plaintiff was the state of Oklahoma, and the defendant was John W. Wilson, as trustee, and the parties will be here referred to as plaintiff and defendant, as they there appeared.

The facts are that the defendant had the oil in his custody and possession, and he wholly failed to list it with the county assessor or to assess it for ad valorem taxation. There is no contention that the oil was not subject to taxation. In September, 1930, after the county assessor had completed his assessment roll and delivered it to the county board of equalization, the tax ferret advised the county treasurer as to the existence and ownership of this property, and that it was omitted from taxation for that year. Whereupon, the treasurer, proceeding under section 12346, O. S. 1931, notified the defendant, and upon the date fixed, the hearing was had before the county treasurer. Upon the conclusion of that hearing, the defendant did make an effort to assess his property with the county assessor, which the assessor refused to receive because of the pending proceedings before the county treasurer.

Upon this appeal the defendant contends, in substance, that the proceedings of the treasurer and tax ferret are premature, and that the orders of assessment made by the county treasurer, and in the county court on appeal, are therefore void; that in September, when the defendant offered to assess the oil with the county assessor, the assessment should have been received, and having been then refused by the assessor, that the treasurer had no authority to assess the oil as omitted property; and that in January, 1930, the assessor was notified by letter of the existence and ownership of the oil, with a request for information as to the method for assessing it for ad valorem taxation, and that therefore the county assessor knew of the existence and location of the oil, and should have assessed it himself, and that for that reason also this oil was not such "omitted property" as could be assessed by the county treasurer in this tax ferret proceeding.

A decision of this cause requires some statement and consideration of the various duties of the defendant and the county assessor.

This property was taxable, and it is not contended otherwise. It should have been listed and assessed at its fair cash value as soon as practicable on or after January 15, 1930 (sec. 12581, O. S. 1931). It was the defendant's duty to list this property to the county assessor in writing (sec. 12589, O. S. 1931), upon the form provided for that purpose (sec. 12593, O. S. 1931), and to make oath as to the correctness of such listings (sec. 12596, O. S. 1931). All this the defendant failed to do.

While this oil was in the custody of the defendant as trustee, it was owned by the Smith Engineering Company, a Kansas or Pennsylvania corporation, or that corporation had an interest in its ownership. On January 18, 1930, that corporation wrote a letter to the county assessor of Payne county advising the county assessor as to the location of this oil, and requesting information as to the law in reference to assessments and tax listings in the state. In reply a deputy county assessor advised the corporation in reference to certain real estate inquired about, and in reference to this oil advised as follows:

"Now, if you own those tanks they are assessed at so much per Bbl. And the crude

oil at so much per barrel depending on the age. At this time we have not got the schedule from the State Board is the reason we have not given the price."

While this correspondence evidences some desire at that time that the oil be assessed and taxed, yet it cannot be construed as complying with the duty to list and assess the oil in the manner provided by statute Prior to commencement of this proceeding, no further effort was made to list or assess the oil. It was not, in fact, assessed, so that it.is clear it was omitted from assessment. In re Daniels' Omitted Property, 108 Okla. 195, 235 P. 543; Talley, Co. Treas., v. Brown (Iowa) 125 N. W. 248.

Since this oil was not listed for assessment in the manner provided by law, there are various provisions of our statute setting out the different methods by which it might have been assessed for taxation for the year 1930. If the assessor knew of the existence and location and ownership of the oil, it was his duty to place it upon the assessment roll (secs. 12596, 12617, O. S. 1931), or the assessor might have entered this oil on the assessment roll pursuant to the authority conferred by section 12587, O. S. 1931, or under certain circumstances the assessor might have been authorized and justified in placing this oil upon the assessment roll with an added penalty of 50 per cent. of its value (secs. 12597, 12617, O. S. 1931), or this oil could have been assessed for taxation by the county treasurer proceeding upon notice and hearing, as undertaken in this case, pursuant to the authority of section 12346, O. S. 1931. These various methods of assessment are clearly set out and authorized in the sections of the statute above referred to, and we see no reason for burdening this opinion by copying or quoting the sections, and therefore refer to them by number only.

In our statutes there is not the slightest indication that any or either of these methods of assessment of taxable property for taxation should be held to be exclusive. Upon the contrary, it appears the legislative intent was that any or either of those methods should be available so long as no double assessment resulted, to the end that the county might in all instances be enabled to procure the assessment for taxes of all taxable property in the county. We, therefore, hold that the rights of the county to assess taxable property under the various provisions for assessment thereof are cumulative, and that neither is exclusive, and that so far as the rights of the taxpayer are concerned.

the county may pursue either method of assessment to its conclusion, and to the assessment of the property, whenever the circumstances justify and permit the particular method sought to be followed in the assessment of the particular property in question.

The defendant suggests that since the assessor had notice by letter of the location and ownership of this oil, it was the duty of the assessor to assess this oil upon the failure of the owner or trustee to make timely assessment thereof. We agree with that contention, but the assessor neglected to discharge that duty and this oil remained as omitted property; however, since the rights of the county are cumulative as to the other methods of assessment, neither the failure of the county assessor to assess this property himself or the failure of the defendant to list and assess it in the manner provided by law, could operate to deprive the county of the right to assess the oil by the method here undertaken.

The assessor is required to make oath that his assessment roll is correct and complete (sec. 12600, O. S. 1931). If he made a false oath and failed or refused in the discharge of his duties, he might be proceeded against therefor, and his failure to discharge his duty might justify his removal from office under the authority of the various provisions of chapter 20, art. 2, O. S. 1931, but the failure of the assessor to perform his duty could not operate to relieve the defendant of the liability to have his taxable property assessed for 1930 at its fair value. It is assumed that, however this propeety was assessed, whether upon the listing furnished by the defendant, or by the county assessor, or by the treasurer in this proceeding, it would be assessed at its fair value, and if this was done the defendant could suffer no injury by whatever method the oil is assessed.

The defendant here contends that the valuation of 70c per barrel determined by the county treasurer, and on appeal by the county court, is not justified by the evidence. The defendant insists that the oil should not be assessed for more than 21c per barrel. The fair value of this oil was a question of fact to be established in the trial court and to be there determined. In behalf of the plaintiff it was shown that the oil was worth 70c per barrel. The defendant testified in reference to the value of the oil as follows:

"Q. Do you know what the value of that oil was on January 1, 1930? A. I couldn't tell exactly on that date, I know about what it was when we received it. Q. Had the

value decreased? A. Yes, sir, all oil decreased in 1929. Q. To what extent had it decreased on January 1, 1930? A. I would say at least 50 per cent. of its value. Q. How much was it worth on June 28, 1929? A. I told Mr. Isenhart it was worth about 65c a barrel."

The defendant offered no other or more definite proof to controvert the showing made by the state that the oil was worth 70c per barrel. The defendant himself here makes no clear or positive statement even as to his opinion of the value of the oil at any time. It is not at all clear when it was, or under what circumstances, that he told Mr. Isenhart the oil was worth 65c. This testimony is quite indefinite as to the value of the oil on January 1, 1930. The oil was received by the defendant a few months before that time. This testimony is fairly susceptible of the construction that the defendant did not know the value of the oil on January 1, 1930, but that in his opinion it was worth about 65c per barrel. Other evidence showed that a certain other taxpayer, an oil company, had listed oil owned by that taxpayer at a much lesser price, possibly as low as 21c per barrel, and that such listing had been accepted by the assessor, but it is not shown that it was the same kind of oil or similar to the oil here under consideration. If this oil had been worth no more than 21c per barrel, then surely some more definite proof or statement as to its value could have been made by the defendant. We do not mean to infer that the burden is upon the taxpayer in such a proceeding to establish the value of the property sought to be assessed. The rule is to the contrary. (In re Daniels' Omitted Property, supra.) The burden is upon the state to establish the value of the property to be assessed, but in this case the state had established the value at 70c per barrel, by competent evidence, and the evidence offered by the defendant on that point is wholly insufficient to overcome the state's proof. The trial court found and determined that to be the fair value of the oil, and from the entire record we cannot say that such conclusion was not justified by the evidence. It may be that the defendant would have fared better had he complied with the law in the first instance and listed this property for assessment in the manner required of him by law, but, if true, that fact cannot aid him here. This property having been omitted from taxation, the question to be determined was its fair value, and that value having been determined, and that conclusion being justified by all of the evidence submitted on the question, we cannot here disturb that conclusion. If it be true that other taxpayers procured the assessment of similar property at a lower price, that fact cannot aid defendant here, as the question for determination was the value of his omitted property here sought to be assessed. Anderson v. Ritterbusch, 22 Okla. 761, 98 P. 1002; Travis v. Dickey, 96 Okla. 256, 222 P. 527.

It is the duty of the county assessor when parties list their property for assessment to consider the valuation placed thereon by the taxpayer, but he is not bound thereby. It is his duty to place the correct valuation thereon (sec. 12598, O. S. 1931), and he owes the duty to all of the citizens and taxpayers of the county to exercise his judgment in the full discharge of this duty along with the various other duties of his office. If it be true that the assessor, by lack of judgment or lack of diligence, has permitted one taxpayer to have his property assessed too low, that cannot avail another taxpayer in a proceeding such as is here considered.

This proceeding was commenced before the county treasurer in September, 1930. The defendant contends that it was premature as being within the current year, since this proceeding sought to assess property for the year 1930. No authorities are cited to support this contention of the defendant. There are various provisions of the statute authorizing the assessment of property by the officers of the county. No such provision fixes the specific time when the authority to assess under that provision shall come into existence. It is, of course, true that no county officer could assess property and add any penalty thereto during the time the owner still had the right and the duty of assessing it himself, but in this case no penalty was added to the assessment, and none may be added in a proceeding such as this one. And in this case the defendant had failed from January 15th until the following September to list his property for assessment in the manner provided by law. It is contemplated by section 12598, O. S. 1931, that the assessor may complete his assessment roll by or before May of the current year. He is required by section 12611, O. S. 1931, as soon as he has completed the assessment, to publish a full and complete list thereof, and by section 12612, O. S. 1931, to remain in his office at least 15 days after closing his books, during which time any person who has failed to render his property shall have an opportunity to do so. By section 12613, O. S. 1931, the assessor is required on the first Monday in June to deliver all lists of property to the county board of equalization. It is presumed,

unless shown to the contrary, that the assessor had complied with every duty imposed upon him by law, and it is shown in this case that the assessment list or roll had been delivered to the county board of equalization prior to the commencement of this proceeding. Since the result of this proceeding is nothing more than the assessment of the defendant's property, at its fair determined valuation, we conclude that the proceedings and the assessment are not void for being premature. The defendant seriously questions the right of the tax ferret to collect his commission in this proceeding to assess this property in the current year. That question is not now before us and cannot be determined in this cause. The claim of the tax ferret for compensation or commission must be passed upon by the county commissioners. Ingram v. Chappell, 127 Okla. 135, 260 P. 20. We express no opinion as to the right of the tax ferret to collect any commission in the matter. That must be determined when he presents his claim.

We conclude that the property here under consideration was "omitted property" within the meaning of the law, and subject to assessment by the county treasurer in the method here undertaken; that the conclusion of the trial court as to the value of the property is sustained by the evidence presented. The judgment of the trial court is affirmed.

RILEY, C. J., and SWINDALL, OSBORN, and BAYLESS, JJ., concur.